STATE OF MINNESOTA *ex rel.* Moses E. Clapp, Attorney General, *vs.*
FIDELITY & CASUALTY INSURANCE COMPANY.

December 27, 1888.

Quo warranto—Right of Foreign Corporation to Carry on Business.
  *Quo warranto held* to be a proper proceeding to try the right of a for-
  eign corporation to carry on its corporate business in this state.

Same—Review of Action of State Officers.—The legal propriety and effect
  of the action of officers of the executive department of the state may be
  determined by the courts when the same are brought in question in causes
  requiring judicial action.

Same—Insurance Commissioner.—The insurance commissioner, in issuing
  certificates allowing foreign corporations to do business in this state, acts
  in a ministerial capacity. His determination is not judicial and final.

Foreign Corporations — Comity—Retaliatory Statute—Gen. St. 1878,
  c. 34, § 269.—In accordance with the policy of our state, and of the in-
  terstate law of comity, foreign insurance corporations are allowed to carry
  on business in this state. A foreign corporation, which has complied with
  our laws, should not, as a measure of retaliation, by force of our retalia-
  tory statute, (Gen. St. 1878, c. 34, § 269,) be excluded from doing business
  here, upon the ground that the laws of the state where such foreign cor-
  poration was created would exclude corporations of this state from doing
  business there, unless it is clearly apparent that such is the effect of the

foreign law. The proper effect of the statutes of New York in this particular being considered doubtful, and the manner of their practical administration being undisclosed, a judgment of ouster against the respondent, a New York corporation, refused.

*Quo warranto.*

*Moses E. Clapp,* Attorney General, and *John B. Sanborn,* for relator.
*Davis, Kellogg & Severance* and *Thomas S. Moore,* for respondent.

DICKINSON, J.   This is a proceeding upon information in the nature of *quo warranto,* to try the right of the above-named respondent, a corporation of the state of New York, to carry on within this state the business of insurance against these three classes of risks, viz., injury or death of persons caused by accident, breach of trust by persons holding places of public or private trust, and the breakage of plate-glass.   The case is presented for decision upon the relator's demurrer to the answer of the respondent.

It is contended on the part of the respondent that this is not an appropriate method of procedure. We hold the contrary. A state has the power of a sovereign to prohibit foreign corporations from exercising their franchises, carrying on their ordinary corporate business, within its borders; and when, in defiance of such prohibition, and contrary to our law, a foreign corporation does assume to exercise corporate franchises in a manner affecting the public interests, *quo warranto* will lie for the purposes of determining the right in question, and of applying a remedy.   Although it is true that the courts of a state have no power to affect by their judgments the corporate existence of foreign corporations, we can restrain the exercise, within our own jurisdiction, of corporate franchises inconsistent with our own sovereignty, whether the corporation whose acts are in question be domestic or foreign.   *State* v. *Boston, Concord & Montreal R. Co.,* 25 Vt. 433.   And see *People* v. *Trustees of Geneva College,* 5 Wend. 211.

It is said on the part of the respondent that we ought not to entertain the proceeding, because the determination of the question whether it should be licensed and permitted to transact its business in this state is committed by law to a branch of the executive department of the state, and that the judicial department of the state has no con-

stitutional control over the action of the executive department. In this the counsel for respondent fail to distinguish between the authority of the judicial department to control the action of executive officers, and the power and duty of the courts to determine, in causes before them, the rights of parties, although the legal propriety and effect of the action of executive state officers may necessarily be thus brought in question. We have assumed, without so deciding, that the insurance commissioner, in respect to the discharge of his duties, is exempt from judicial control. The insurance commissioner, in granting certificates or licenses to foreign corporations to do business here, acts in a ministerial capacity. His determination and action are not judicial and final. If our statute, to be hereafter recited, prohibits foreign corporations, under certain circumstances, to do business in this state, the authority or license of the commissioner in disregard of that statute would be unavailing.

The respondent became incorporated in 1875, in the state of New York. The statute of that state then in force, and under which the incorporation was effected, (chapter 463, Laws 1853, as subsequently amended,) authorized the incorporation of individuals for the purposes of carrying on either one (only) of the two classes or "departments" of insurance therein specified. The "first department" related to what may be briefly referred to as ordinary life insurance. The "second department," or specification of the purposes for which such incorporation was allowed, embraced, among others, the three kinds of risks against which, as is above stated, this company was organized to insure. In 1879, after the incorporation of this respondent, a statute was enacted amending the prior law above referred to. This amendatory act also authorized corporations to be organized for the purposes of insurance, as specified in two "departments" of the act, the first of which we may again refer to as embracing ordinary life insurance. The "second department" consisted of seven specified kinds or classes of risks, among which, designated as the second, third, and fifth classes, respectively, were the three kinds of risks above stated, which this respondent had been authorized to insure against, and in which business it is engaged in New York and in this state. Section 2 of this act declares that "no com-

pany *organized under this act* for the purposes named in the first department shall undertake either of the risks named in the second department, and no company *organized under this act* for either of the purposes mentioned in the second department shall undertake any business mentioned in the first department, nor shall any *such* company hereafter organized undertake or do more than one of the several kinds of insurance mentioned in said second department; and no company organized under this act shall undertake any business or risk except as herein provided: *provided,* that nothing herein contained shall affect the business of any company heretofore duly organized under the second department of this act." Section 6 forbids the organization of companies under this act with a less capital than $100,000; and further provides that "no company organized for the purposes named in the second department shall commence business until they have deposited with the superintendent of the insurance department of this state at least the sum of $100,000," invested in a manner specified. Section 14 forbids any company or association incorporated by or organized under the laws of any other state government to do business unless it has the amount of capital required by the sixth section, and invested in a manner specified. A statute of the state of New York enacted in 1881, amending a prior law, enacted in 1877, required that every corporation or association, organized under the laws of that state or of any foreign country to insure against damage to plate-glass, shall deposit $100,000 in securities with the insurance department of that state; and that no corporation or association existing under the laws of any other state of the United States, with authority to insure against damage to plate-glass, should be permitted to transact business without having made a deposit of securities of the same amount with an officer of the state wherein such corporation or association may have been organized. In 1884 a statute was enacted in the state of New York, providing that insurance companies incorporated under the laws of any other state should not transact business in that state until they had complied with the insurance laws thereof, having first appointed the superintendent of the insurance department their attorney, upon whom process against them might be served.

In our statute law is embodied this provision, (Gen. St. 1878, c. 34, § 269:) "When, by the laws of any other state or nation, any taxes, fines, penalties, licenses, fees, deposits of money or of securities, or other obligations or prohibitions, are imposed on insurance companies of this state doing business in such other state or nation, or upon their agents therein, so long as such laws continue in force the same obligations and prohibitions, of whatever kind, shall be imposed upon all insurance companies of such other state or nation doing business in this state, and upon their agents here." This respondent corporation has a capital of $250,000, has deposited securities as prescribed by the laws of the state of New York, and has complied with all the requirements of those laws. In 1881, the corporation, having complied with all the requirements of the statutes of our own state concerning foreign insurance companies, as it has also ever since done, received from the insurance commissioner of this state a license or certificate of authority to do business in this state, since which time such certificates have been issued yearly.

The validity of our statute, just recited, is not questioned. We are called upon to consider whether its proper effect is to exclude this respondent from prosecuting in this state its proper corporate business of insurance as to the several classes of risks above referred to, in view of the restrictions which, as is claimed on the part of the relator, the statutes of New York impose upon corporations which might be organized in our own state for like purposes. This company was lawfully incorporated for all these purposes in the state of New York, and, as is apparent from the proviso in section 2 of the act of 1879, there has been no attempt or purpose to abridge its charter rights, or the scope of its corporate action. It still is lawfully pursuing in that state the business for which it was lawfully incorporated. The policy of our own state, expressed in its insurance laws, in harmony with the general policy and law of comity prevailing among the states, allows such foreign corporations to engage in businesss here. This corporation has complied with the requirements of our statutes, and there is nothing in its character or purposes opposed to the policy or the laws of this state. In view of this interstate law of comity, and of the policy of our state, manifest in its legislation, to allow such

foreign corporations to do business here, this corporation should not, as a merely retaliatory measure, be excluded from doing so by a judgment of ouster, unless it is clearly apparent that the case is within the scope of our "retaliatory statute," as such laws have been termed; or, in other words, unless it is clearly apparent that if corporations were created within this state for the same purposes, they would be excluded by the statutes of New York from prosecuting their corporate business there with substantially the same privileges enjoyed by this respondent. Whether that is clearly the effect of the statutes of that state, to which we have referred, is the question to be determined. This may be reduced to the more particular questions— *First,* whether a corporation of Minnesota, having authority by its charter to insure against the several classes of risks specified in the second department of the New York statute of 1879, might exercise that right in that state; and, *second,* whether the laws of the latter state so discriminate in favor of this respondent and against all foreign corporations in respect to the requirements as to the amount of capital and of deposits as to make our retaliatory statute applicable.

In considering the effect of the New York statutes it should be borne in mind that not only may the law of comity, by which generally corporations created under the laws of one state are allowed to extend their business into other states, be set aside by directly prohibitory legislation, but that the result is the same where from the general course of legislation it is clearly apparent that it is opposed to the established policy of the state to allow foreign corporations thus to act. *Bank of Augusta* v. *Earle,* 13 Pet. 519, 592; *Christian Union* v. *Yount,* 101 U. S. 352; 2 Mor. Priv. Corp. §§ 960, 965. The statutes to which we have referred do not directly prohibit foreign corporations from insuring against more than one of the several kinds of risks specified in the second department of the act of 1879. Section 2 of that act relates in terms only to domestic corporations of that state, the language being that "*no company organized under this act*" shall, etc., and, "nor shall any *such* company," etc. That act does expressly restrict the operation of domestic corporations, thereafter organized, to one of such classes of risks. Whether from that specified reservation the conclusion is clearly deducible that the

general established policy of the state is opposed to the exercise of such privileges by foreign corporations, is not free from doubt. Whether that is the effect of the legislation of New York we cannot settle by any decision we may make. Only the courts of that state can authoritatively determine that. In the absence of any judicial construction of the law by the courts of that state or of a practical administration of it in a manner prejudicial to foreign corporations, our retaliatory act should not be deemed applicable if it is felt to be doubtful how the statutes of New York should be construed, even though we might be of the opinion that their *probable* effect is to restrict the operation of foreign corporations to a narrower field than that allowed to this respondent. We do not, therefore, find it necessary to express our opinion upon the question whether the established public policy of the state of New York forbids foreign corporations to engage in more than one of the several classes of insurance before referred to. It is enough for the purposes of this case that we deem that to be a matter of reasonable doubt. It is not unreasonable to presume that the omission in the act of 1879 to declare, with respect to foreign corporations, the same restrictions which were imposed upon domestic corporations thereafter to be organized was not the result of mere inattention. The omission is so plain, and the expressed restriction so plainly made only in respect to corporations to be organized under that act, that it is manifest that there was no intention to expressly declare the same restriction as to foreign corporations. This omission is more significant when it is considered that, while in the same act (section 14) attention was directed to the conditions to be observed by foreign corporations doing business in that state, there is nothing to indicate a purpose to restrict the scope of the business to one only of these several classes of insurance. Yet presumably the legislature knew that not only by the law of comity, but by the provisions of this very act, foreign insurance companies were permitted to extend into that state the business for which they had been incorporated, unless that should be prohibited either by direct legislation or by implication, upon grounds of public policy manifest from the general course of legislation. See authorities last cited. It is at least doubtful whether the act of 1884 affects the

case. It is not apparent that "the insurance laws" of the state which foreign corporations were required to *comply* with before transacting any business there, were intended to embrace a particular statutory restriction as to the scope of the business in which *domestic* corporations, organized subsequent to the act of 1879, might engage. The effect of the law of 1879 was to limit the purposes for which domestic corporations might be formed to one of the several specified classes of insurance. The act of 1884, as well as that of 1879, recognizes the right of foreign insurance companies to extend their business into that state. In requiring them to *comply* with the laws of that state it was not intended that they should become reincorporated there with such restrictions as the statutes provided as to the organization of domestic corporations. The foreign corporation was allowed to act and do business under the law of its being, its charter, subject to such regulations as the legislature might impose. The more reasonable construction of the act of 1884, so far as it is here material, is that it required conformity to the laws enacted with respect to foreign corporations, and to those of a more general character, applicable alike to all corporations engaged in the business of insurance.

It is not, therefore, clearly apparent that the laws of New York prevent a Minnesota corporation, chartered for doing insurance business of the several classes in question, from carrying on the same business in that state, and we shall assume that they do not, as we turn our attention to the second of the two questions above stated. If such is the case, there remains but little to decide. For the reasons above given we shall not express what, in our opinion, may be the possible or probable effect of the statute of New York upon the point in question, considering that if the proper construction is doubtful, the case is not one for the application of our retaliatory law. The provisions of section 6 of the act of 1879 are applicable only to domestic corporations. If foreign corporations, when authorized by their charters, may carry on in New York the several kinds of insurance here in question, we do not think that section 14 should be construed as requiring $100,000 of capital and deposited securities for *each* of the different classes of risks engaged in. The amount fixed by section 6, as to domestic corporations, is $100,000. Section 14

only requires foreign companies to have "the amount of actual capital required by the sixth section of this act for companies of this state;" that is, $100,000. Nor does the act of 1881 contain anything justifying this proceeding. If a Minnesota corporation, whose charter authorizes it to insure plate-glass, shall undertake to do that one class of insurance business in the state of New York, a deposit of securities to the amount of $100,000 is required to be made in this state. Domestic corporations of the state of New York rest under the same obligation. The fact that this respondent corporation is also lawfully engaged in other kinds of insurance does not affect the case. It is required to make, and has made, the same deposit of securities that our corporations would be required to make. It is therefore our opinion there should be no judgment of ouster against this respondent.

Writ quashed.