OCCIDENTAL LIFE INSURANCE CO., Appellant, *v.* HOLMES, State Auditor, et al., Respondents.

(No. 7,801.)

(Submitted May 6, 1938.   Decided June 2, 1938.)

[80 Pac. (2d) 383.]

*Mr. R. H. Glover, Mr. S. B. Chase, Jr.,* and *Mr. John D. Stephenson,* for Appellant, submitted an original and a reply brief; *Mr. Stephenson* argued the cause orally.

*Mr. Harrison J. Freebourn,* Attorney General, and *Mr. Lee Metcalf,* Assistant Attorney General, for Respondents, submitted a brief; *Mr. Metcalf* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

The plaintiff is a California corporation engaged in the life insurance business and admitted to do business in Montana. In compliance with a demand of the state auditor and insurance commissioner, the plaintiff paid to the state of Montana taxes and fees in the sum of $4,508.64, alleged to be due for the year 1937, and which the statutes require to be paid before the auditor is authorized to issue the annual certificate to corporations of that nature to continue in business in this state. The plaintiff tendered the auditor the sum of $3,621.16, which it claimed was the legal amount due, which tender was refused, and thereupon the plaintiff paid the amount first above mentioned but at the same time filed its written protest as to the payment of $887.48 of the amount, and, within the time allowed, commenced

this action in the First Judicial District of the State of Montana to recover the amount paid under protest.

When the matter came on for hearing, counsel for the respective parties entered into a stipulation by which it was agreed that if plaintiff prevailed in the action an additional refund, which was paid in part for taxes alleged due for the previous year in the sum of $55.65, but under protest, might be added to the amount claimed due by refund for 1937. A general demurrer to the complaint was sustained; plaintiff refused to plead further and appealed to this court.

Plaintiff alleges and contends that the reciprocal provisions of section 6155, Revised Codes of Montana, under which the auditor, adopting the California rates, computed the fees and taxes, do not apply and that the correct amount due should be arrived at by computing the fees and taxes as provided by sections 6112 and 6276 of the Revised Codes, which would give the following result:

Demonstration No. 1.

License tax on first $5,000 of premiums ........... $  125.00
Premium tax on remaining $173,108.22 of premiums
    at the rate of 2% ............................   3,462.16
Filing fee .......................................     25.00
Publication fee ..................................      9.00

Amount tendered and refused $3,621.16

The tax on premiums collected under the California statute, Political Code of California, section 3664b, is 2.6%, or six-tenths more than the Montana rate, and under the "retaliatory" or reciprocal provisions of section 6155 of the Revised Codes of Montana, the state auditor and tax commissioner of Montana adopted the higher California rate in computing the tax on the premiums collected at 2.507%, allowing a reduction of the California rate of .093% by reason of the fact that Montana requires the tax to be paid March 1, while California makes the collection in two semi-annual payments at later dates, and the reduction of the California rate was allowed for interest

between the dates of collection as between the two states, and by that method equalized the tax.

The state auditor and insurance commissioner of Montana computed the tax due from plaintiff under the higher California rate on the assumption that our section 6155, Revised Codes, was operative in the premises, and such computation was made as follows:

Demonstration No. 2.

| | |
|---|---:|
| License tax on first $5,000 of premiums collected ..... | $ 125.00 |
| Premium on remaining premiums collected $173,108 at 2.507% .................................. | 4,339.64 |
| Filing fee ...................................... | 25.00 |
| Publication fee ................................. | 9.00 |
| Miscellaneous fees .............................. | 10.00 |
| Total demanded and paid.................... | $4,508.64 |
| Admitted due and tendered...................... | 3,621.16 |
| Amount paid under protest.................. | $ 887.48 |

The reciprocal or retaliatory statutes of the two states are materially different in the method of computation provided. Montana imposes a tax of 2% on premiums collected and certain fees in addition, but allows no deduction for taxes paid on real estate owned by the foreign corporation in this state. California imposes a tax on premiums collected of 2.6% and certain fees, but deducts from the total taxes found to be due on premiums all taxes collected on real estate owned by the foreign corporation in that state. By allowing the deduction of the real estate taxes collected, the tax levied on premiums collected in that state is, on facts involved such as in the case at bar, much less than the taxes levied on premiums collected in Montana.

The statutes of both states provide in effect that the reciprocal or retaliatory statute shall apply only when other states impose greater burdens upon foreign corporations which engage in business in the state collecting the taxes and fees than are imposed for like purposes in the state of incorporation. Such

being the situation, it becomes necessary to determine what burdens in the way of taxes and fees would be imposed upon a Montana corporation doing business in California. In proceeding with that problem it must be kept in mind that the respective rates of taxation on real estate in the two states are immaterial.

The total taxes paid by the foreign corporation in California are deducted from the total taxes found to be due on the premiums collected, and the rate of the levy and the amount of the real estate are not taken into account. To demonstrate the distinction between the respective methods we will assume that the plaintiff here is a Montana corporation admitted to do business in California, collected the same in premiums in that state and paid the same amount of real estate taxes on land owned there, which would give us,

Demonstration No. 3.

| | |
|---|---:|
| License tax on first $5,000 of premiums collected .... | $ 125.00 |
| Premium tax on remaining $173.108.22 of premiums collected at 2.507% .......................... | 4,339.64 |
| Filing fee ..................................... | 25.00 |
| Publication fee ................................ | 9.00 |
| Miscellaneous fees ............................. | 10.00 |
| Total ..................................... | $4,508.64 |
| Deduct total taxes paid on real estate .............. | 1,684.87 |
| Amount a domestic corporation would pay in California on premiums ........................ | $2,823.77 |
| On the other hand, the California plaintiff doing business in Montana paid for taxes on premiums collected and in fees................................ | $4,508.64 |
| In addition paid taxes on real estate ........... | 1,684.87 |
| Total ..................................... | $6,193.41 |

The $887.48 paid under protest is included in the item of $4,508.64.

It has been suggested that the retaliatory provisions of section 6155 must be separately considered and applied, i. e., the tax on premiums collected and the real estate taxes must be computed and collected separately and independently of each other. Such conclusion fails to give effect to the purpose of the reciprocal and retaliatory statutes under consideration.

The purpose of our section 6155 is to place on the foreign corporation the same total burden for doing business here that the state where the foreign corporation has its domicile would impose upon a Montana corporation doing a like business there. To arrive at a fair and equitable adjustment and give the statutes such an effect, the total exactions must be taken into account, irrespective of how such exactions may be characterized or named.

The whole question, under the head of "Retaliatory Tax Laws," is very fully treated in an annotation in 91 American Law Reports, at page 795, from which we quote at length:

"In order to protect domestic corporations, particularly domestic insurance corporations, doing business in other states, from undue burdens, prohibitions, and limitations placed upon them by foreign states by way of taxes, license fees, deposits, etc., many states have enacted what are commonly designated as 'retaliatory statutes' against foreign corporations, particularly insurance companies, doing business in the state. The terminology of these statutes differs in particular details, but in the main they provide that whenever the laws of a particular state impose greater burdens, prohibitions, limitations, taxes, license fees, etc., upon companies organized in the enacting state and doing business in such other state, than are imposed by the laws of the enacting state upon foreign corporations doing business in that state, then the same burdens, prohibitions, limitations, taxes and license fees as are imposed by such foreign state upon corporations of the enacting state shall be imposed by the enacting state upon corporations of such foreign state doing business in the enacting state.

"There exists some difference of opinion among the courts as to the precise character of such statutes, whether retaliatory

or reciprocal. However, whatever their character, it is obvious (notwithstanding expressions of some courts to the contrary) that their ultimate object is not to punish foreign corporations doing business in the state, or retort the action of the foreign state in placing upon corporations of the enacting state doing business therein burdens heavier than those imposed upon corporations of such foreign state doing business in the enacting state, but to induce such foreign state to show the same consideration to corporations of the enacting state doing business therein as is shown to corporations of such foreign state doing business in the enacting state. In short, that the ultimate object of such statutes, by whatever name they may be designated, is to procure reciprocity of action on the part of the states concerned with reference to a given subject, and not plain retaliation, is manifested by the fact that in determining whether the same tax is imposed upon a foreign corporation doing business in the enacting state as is imposed by the foreign state upon a corporation of the enacting state doing business therein, the courts have given more consideration to the equality of the ultimate amount of the tax collected by the states concerned than to the equality of the rate of taxation, which, if made the controlling element of the tax, might, for various reasons, give to the enacting state an advantage in respect to the amount of tax collectable under the statute. See, for example, cases cited under subd. III, c.

"Speaking of the nature of the Kansas statute, the court in *Phoenix Ins. Co.* v. *Welch* (1883) 29 Kan. 672, observed: 'This provision is called in insurance circles a "retaliatory clause." It seems to us more justly to be deemed a provision for reciprocity. It says, in effect, that while we welcome all insurance corporations of other states to the transaction of business within our limits, we insist upon a like welcome elsewhere, and that if other states shall attempt, directly or indirectly, to debar our corporations from the transaction of insurance business within their borders, we shall meet their corporations with the same restrictions and disability. It is, in brief, an appeal for comity, a demand for equality. As such, it is manifestly fair and just.

It arouses no sense of injustice, and simply says to every other state in the Union: ''We will meet you on the basis of equality and comity, and will treat you as you treat us.'' '

''In *Bankers' Life Co.* v. *Richardson* (1923) 192 Cal. 113, 218 Pac. 586, the court said: 'The so-called retaliatory laws are also reciprocal in nature. Their ultimate object is to secure reciprocity. * * * The tax commission recommended their continuance in this state at the time of the submission of the constitutional amendment, upon the ground that it would do away with all discrimination between domestic and foreign insurance companies, which, it said, was but fair, and, moreover, would give California companies a better chance to do business in other states under retaliatory and reciprocal laws. * * * But, whether regarded as reciprocal or retaliatory, in so far as they are retaliatory in their nature, and involving the comity of states, they are to be strictly construed, executed with care, and not applied to any case that does not fall plainly within the letter of the law.'

''Speaking generally of the nature of retaliatory statutes directed against foreign corporations, the supreme court of Nebraska in *State* v. *Insurance Co. of N. A.* (1904) 71 Neb. 320, 99 N. W. 36 [100 N. W. 405, 102 N. W. 1022, 106 N. W. 767], employed the following language: 'Whatever may be the proper designation of the Act as to its nature and characteristics, such legislation seems to be generally regarded as eminently just and fair, and based upon acknowledged sound legal principles. Such an Act asserts only the self-respect and dignity of a sovereign state, justly maintained in its business relations and dealings with other commonwealths. While extending comity, and inviting friendly commercial intercourse, it demands reciprocal equality and fairness as a basis for such transactions. This state, while ready to acknowledge the courtesy due to sister states and the corporations created under their laws, insists that our own corporations, formed and fostered under the laws of this state, shall receive the same consideration and protection which this state accords to the corporations coming here from

other states to engage in business within the limits of our own state.'

"It was held in *State ex rel. O'Brien* v. *Continental Ins. Co.* (1917) 67 Ind. App. 536, 116 N. E. 929, that the retaliatory tax statute of Indiana against foreign insurance companies doing business in Indiana was not prompted by tender solicitude for the public treasury of Indiana, but by the desire to secure for the insurance companies of Indiana doing business in other states even-handed treatment by the legislatures of such states; and that, therefore, the state auditor, in determining whether a foreign insurance company doing business in Indiana should be taxed under the general statute relating to taxation of foreign insurance companies, or under the retaliatory statute, must not be guided by the consideration as to which method of taxation would put the greater number of dollars in the public treasury. The court said that the retaliatory taxing statute, being penal in its nature and involving the comity of the state, must be strictly construed and executed with care. 'The amount of revenue that may be derived under this statute is a fact legitimately to be considered, but it is incidental to the main purpose of the statute.'

"The evident purpose of the retaliatory statute of New York against foreign insurance companies doing business in that state was held to be to treat the corporations of another state seeking to transact business in New York precisely as such other state would treat New York corporations seeking to do business therein, that it rested upon the idea that the comity due from one state to another is not required to be more than equal and reciprocal, and that what is wholly a matter of privilege may be granted or withheld upon conditions. (*People* [*of New York*] v. *Fire Assn. of Philadelphia* (1883) 92 N. Y. 311, 44 Am. Rep. 380 (affirmed in (1886) 119 U. S. 110, 7 Sup. Ct. 108, 30 L. Ed. 342.)

"The purpose of retaliatory statutes is simply to equalize the amount of tax payable, and to prevent unfavorable discrimination by other states against corporations of the retaliating state doing business in such states in the exercise of the

taxing power. (*Pacific Mut. L. Ins. Co.* v. *State* (1931) 161 Wash. 135, 296 Pac. 813.)

"The Illinois statute [Smith-Hurd Stats. chap. 73 sec. 232] in substance providing that whenever the laws of any other state should require of life insurance companies of Illinois doing business in such other state any payment for taxes, fines, license fees, or otherwise, greater than the amount required for such purposes from similar companies of other states by the laws of Illinois, then all life insurance companies of such state should be required to pay for taxes, fines and license fees an amount equal to the amount imposed therefor by the laws of such other state upon Illinois companies, was held in *Metropolitan L. Ins. Co.* v. *Boys* (1920) 296 Ill. 166, 129 N. E. 724, to be not a reciprocity statute but a retaliatory statute, which, unlike a reciprocity statute, must be strictly construed. The court said: 'It seems quite clear from a consideration of the language of paragraph 200 that it was not intended by this statute to reciprocate for past or present favors, but to retaliate against the states from which the foreign corporations came, by levying certain penalties in Illinois on such foreign insurance companies, for it will be noted that the language of said paragraph does not provide that the deposits, taxes, fines, penalties, and fees shall be the same as those fixed by the New York law upon foreign corporations, but only that when the deposits, taxes, fines, penalties, fees, etc., fixed by the New York law, are greater than the amount required for such purposes from similar companies of this state, then the same fees are to be collected from the New York corporations in this state. * * * The Illinois statute did not say to New York, "We will collect from your insurance companies the same taxes that you collect from Illinois or other foreign companies," but what was said to New York is substantially as follows: "If you collect from Illinois and other foreign insurance companies taxes at a greater rate than we tax them, we will collect from your insurance companies the same rate." This is clearly a retaliatory and not a reciprocal provision of the statute.' It was, therefore, held that under the rule that a retaliatory statute must be strictly construed, the

Illinois statute might be applied only to those cases that came plainly within its letter; and under such a construction, the right of a foreign insurance company doing business in Illinois to reduce the taxes owing from it for any subsequent year in the amount of overpayment in a preceding year was denied, there being nothing in the statute to indicate that the legislature had in mind in any way paying back to any insurance company or reimbursing it for taxes for previous years that might have been paid by mistake.

"It was held in *State ex rel. Atty. Gen.* v. *Fidelity & C. Ins. Co.* (1892) 49 Ohio St. 440, 31 N. E. 658, 16 L. R. A. 611, 34 Am. St. Rep. 573, that the statute of Ohio in substance providing that when by the laws of any other state any taxes, fines, penalties, license fees, deposits of money or of securities, or other obligations or prohibitions were imposed on insurance companies of that state doing business in such state, the same obligations and prohibitions should be imposed upon all insurance companies of such other state doing business within Ohio, was retaliatory, and not reciprocal, in character, and that it must therefore be strictly construed, and must not be applied to a case that did not fairly fall within its letter. The court said: 'Reciprocity expresses the act of an interchange of favors between persons or nations; retaliation, that of returning evil for evil, or disfavors for disfavors. Accurately speaking, we reciprocate favors and retaliate disfavors. This, then, is a retaliatory statute. It treats the companies of other states as Ohio companies are treated in those states; but the moment it is made to appear that Ohio companies are not treated with the same favor in another state that companies of that state are treated in Ohio, a case is made for the application of its provisions, and retaliation follows as a result.' "

In the case of *Life & Casualty Ins. Co. of Tennessee* v. *Coleman*, 233 Ky. 350, 25 S. W. (2d) 748, the Court of Appeals of Kentucky said: "In the instant case the Tennessee Revenue Act provides for a 2½ per cent. tax upon the gross premiums collected in the state which shall be in lieu of all other taxes. The Kentucky Revenue Act provides for a 2 per

cent. tax upon gross premiums collected in the state, and in addition municipalities are permitted to impose taxes upon insurance companies for the privilege of doing business within their corporate limits. The municipalities are agencies of the state government and can levy and collect taxes only in the manner and amount authorized by the state. In enacting the retaliatory insurance statute, it was the purpose of the legislature to equalize the burdens imposed upon foreign and domestic companies. There can be no equalization of the burden unless the taxes levied or the obligations imposed are the same in the aggregate. In order to provide equality, which is the manifest object of the statute, it is not necessary to levy a specific tax to meet a similar tax levied by another state, but, if the aggregate of the taxes collected from a foreign insurance company in the retaliating state equals the tax imposed on foreign insurance companies by the state in which the taxed company is incorporated, the object of the law has been attained. Equality is the result aimed at and is achieved when the ultimate taxes levied are equal, even though they are imposed by different arms of the respective state governments and are applied to different purposes. * * * Our conclusion is that the provisions of the retaliatory tax statute were complied with when the Tennessee company paid an amount equal to the total tax payable by foreign companies on the same volume of business in Tennessee, and, in determining the amount to be paid, the Tennessee company must be given credit for municipal taxes paid in Kentucky.''

It thus becomes obvious that Montana's rate of taxation remains fixed at 2% on premiums collected in any contingency, while California's rate of 2.6% for the same purpose is made flexible and adjustable to allow credit for the amount of taxes paid by the foreign corporation on real estate owned in that state. Its tax, therefore, on premiums collected is reduced by the amount of such real estate taxes paid.

It also appears clear that under any computation that can be made the net result shows that Montana has, in the case at bar, imposed a greater burden upon the California corporation than

the California statutes would, in the absence of retaliatory statutes, impose upon a Montana corporation doing business in that state and from which a like amount of premiums were collected and a like amount of real estate taxes were paid. Such being the case, section 6155, supra, does not come into play for the reason heretofore stated, and the taxes and fees as computed by the plaintiff, Demonstration No. 1, shows the correct amount due, and the plaintiff is entitled to recover the amount paid under protest.

It was contended by counsel for defendants that to accede to the demands of the plaintiff and allow the refund of the amount paid under protest would conflict with section 11, Article XV of our Constitution. We think such contention to be without merit. As we construe that provision of the Constitution, its purpose is to prevent granting to foreign corporations any rights or immunities not enjoyed by corporations of the same or similar kind created under the laws of and doing business in this state, and does not apply to a case such as that at bar.

In sustaining the demurrer to the complaint on the ground that it does not state a cause of action, we think the trial court was in error.

The judgment is reversed with instruction to overrule defendants' demurrer.

ASSOCIATE JUSTICES STEWART and ANDERSON concur.

MR. CHIEF JUSTICE SANDS, absent on account of illness, takes no part in the foregoing decision.

MR. JUSTICE ANGSTMAN:

I dissent. In my opinion the trial court was correct in holding that the state auditor properly applied the California rate. The case calls for an interpretation of section 6155, Revised Codes, which reads:

"Whenever the existing or future laws of any other state or territory of the United States require of insurance corpora-

tions, incorporated by or organized under the laws of this state, having agencies in such other state or territory, or of the agents thereof, any deposit of securities in such state or territory for the protection of policy-holders or otherwise, or any payment for taxes, fines, penalties, certificates of authority, license fees, or otherwise, greater than the amount required for such purposes from similar companies of other states or territories by the existing laws of this state, then, and in every such case, all companies of such states or territories establishing, or having heretofore established, any agency or agencies in this state, are required to make the same deposit for a like purpose with the auditor of this state, and to pay said auditor for taxes, fines, penalties, certificates of authority, license fees, or otherwise, an amount equal to the amount of such charges and payments imposed upon or required by the laws of such state or territory of the companies of this state or the agents thereof.''

In considering the question under consideration, we must keep in mind that California also has a retaliatory statute found in section 3664b of the 1935 Supplement of Deering's Codes, page 284 (Pol. Code), reading as follows:

''*Tax on gross premiums of insurance companies.* Every insurance company or association doing business in this State shall annually pay to the State a tax of two and sixty hundredths per cent. upon the amount of the gross premiums other than gross premiums from ocean marine insurance, received upon its business done in this state, less return premiums and reinsurance in companies or associations authorized to do business in this state; provided, that there shall be deducted from said two and sixty hundredths per cent. upon the gross premiums the amount of any taxes paid by such companies on real estate owned by them in this state. This tax shall be in lieu of all other taxes and licenses, state, county, and municipal, upon such companies or their property, except taxes upon their real estate; provided, than when by the laws of any other state or country, any taxes, fines, penalties, licenses, fees, deposits of money, or of securities, or other obligations or prohibitions, are imposed on insurance companies of this state, doing business in such other state or

country, or upon their agents therein, in excess of such taxes, fines, penalties, licenses, fees, deposits of money or securities or other obligations or prohibitions, imposed upon insurance companies of such other state or country, so long as such laws continue in force, the same obligations and prohibitions of whatsoever kind must be imposed by the Insurance Commissioner upon insurance companies of such other state or country doing business in this state.''

I think the majority are in error in supposing that a Montana corporation doing business in California would be permitted to deduct any real estate tax paid by it in California from the California premium tax. Montana does not permit a California corporation to deduct real estate taxes, and, hence, under the California retaliatory statute, California would deny that right to a Montana corporation.

Plaintiff relies and the majority count strongly upon the case of *Life & Casualty Ins. Co. of Tennessee* v. *Coleman,* 233 Ky. 350, 25 S. W. (2d) 748. The facts there were somewhat similar to those here, but it does not appear in that case that the state of the corporation's domicile (there Tennessee) had a retaliatory statute as is the case with California. The supreme court of Tennessee had already held, as appears from the opinion in that case, that foreign corporations were not subject to municipal taxes. Here, as I view the situation, because of the retaliatory provisions of the California statute, a Montana corporation doing business in California and owning real estate there could not have its real estate taxes deducted from its premium tax, because Montana does not permit such a deduction as to California corporations doing business here.

I think the judgment should be affirmed.