No. 35,019

EMPLOYERS CASUALTY COMPANY, *Plaintiff*, v. CHARLES F. HOBBS, Commissioner of Insurance, and WALTER E. WILSON, Treasurer of the State of Kansas, *Defendants.*

(107 P. 2d 715)

Opinion filed December 7, 1940.

*Clayton E. Kline, M. F. Cosgrove, Balfour S. Jeffrey* and *Robert E. Russell,* all of Topeka, for the plaintiff.

*Jay S. Parker,* attorney general, and *C. Glenn Morris,* assistant attorney general, for the defendants.

The opinion of the court was delivered by

WEDELL, J.: This was an original proceeding in mandamus brought by the Employers Casualty Company, an insurance company, incorporated under the laws of the state of Texas, against the commissioner of insurance and state treasurer of this state to compel

repayment of a so-called retaliatory tax, assessed by the insurance commissioner of this state and paid under protest. The proceeding comes to us for decision on a motion for judgment on the pleadings, consisting of a motion for an alternative writ and the answer of defendants. The defendant, the state treasurer, is named merely as a stakeholder of the fund, and we shall refer to the insurance commissioner as the defendant.

There is really no dispute concerning material facts. The conceded facts are: Plaintiff is an insurance company and writes casualty and other forms of insurance in this state as well as in the state of Texas, the latter state being its domicile. On February 29, 1940, plaintiff filed with defendant a statement of its condition as of December 31, 1939, as required by G. S. 1935, 40-225, together with a verified statement of the amount of all premiums received from its business in this state for the year ending December 31, 1939, as required by G. S. 1935, 40-252. At the same time it also tendered payment to defendant of taxes, fees and charges amounting to $2,-797.92, which amount is conceded to be the correct amount under the primary law of this state (G. S. 1935, 40-252). The primary tax on all premiums received in this state during the preceding year is two percent. (G. S. 1935, 40-252 B.) The motion for the writ disclosed plaintiff had invested more than fifty percent of its entire assets in Texas securities. Under the laws of the state of Texas plaintiff would be required to pay a tax on gross premiums collected in Texas of 3.25 percent unless plaintiff had invested in certain tax securities to the extent of fifty percent of its assets. If plaintiff invested fifty percent of its assets in Texas securities, the rate of taxation on gross premiums collected in Texas was .625 percent or ⅝ of one percent. Plaintiff had invested no part of its assets in Kansas securities. Defendant concluded plaintiff, on the basis of the Texas law, was therefore liable to this state for gross premiums received in this state for the year ending December 31, 1939, at the rate of 3.25 percent, or for a total tax in the sum of $4,592.67. That was $1,794.75 more than the primary tax under the laws of this state. In order to obtain a renewal of its certificate of authority to do business in Kansas, plaintiff paid $1,794.75 under protest. That is the amount plaintiff seeks to recover in this proceeding.

Whether plaintiff can prevail depends upon the proper interpretation and application of so-called retaliatory legislation to the particular circumstances of this case. While the provisions of G. S.

1935, 40-253, our so-called retaliatory statute, and similar statutes of other states are designated as retaliatory clauses in insurance circles, the real purpose of these statutes is not retaliation, but substantial equality and comity between states and countries. By these statutes states or countries intend to say to each other, we will treat you as you treat us. (*Phoenix Ins. Co. v. Welch, Supt.*, 29 Kan. 672; *Employers Casualty Co. v. Hobbs*, 149 Kan. 774, 775, 89 P. 2d 923.) The actual purpose of such legislation is to equalize the burdens imposed upon foreign and domestic corporations. (*Life & Casualty Ins. Co. v. Coleman*, 233 Ky. 350, 25 S. W. 2d 748; *Employers Casualty Co. v. Hobbs*, supra, p. 778.) In the latter case this court reviewed numerous decisions, including authorities contained in an extensive annotation in 91 A. L. R. 765, and concluded:

" . . . it may be fairly deduced from the various cases therein cited that the general intent of retaliatory statutes is to level the amount of taxes and fees that must be paid and to insure substantial equality." (p. 778.)

In order to effectuate that intent and purpose the particular or peculiar circumstances of each case must, of course, be considered and appraised in keeping, not only with the letter, but the spirit of the law.

Our so-called retaliatory statute, G. S. 1935, 40-253, provides:

"Whenever the existing or future laws of any other state or country shall require from insurance companies or fraternal benefit societies organized under the laws of this state, or of the agents thereof, applying to do business in such other state or country, any deposit of securities in such state or country for the protection of policyholders therein, or otherwise, or any payment for taxes, fines, penalties, certificates of authority, licenses, fees, compensation for examination, or otherwise, greater than the amount required for such purpose from insurance companies of other states by the then existing laws of this state, then, and in every case, all companies of any such state or country, doing business in this state shall make the same deposit, for a like purpose, with the commissioner of insurance of this state, and pay to the commissioner of insurance for taxes, fines, penalties, certificates of authority, licenses, fees, compensation for examination, or otherwise, an amount equal to the amount of such charges and payments imposed by the laws of such other state or country upon the companies of this state and the agents thereof."

As previously stated, it is conceded the total tax under the primary statute of this state (G. S. 1935, 40-252) was properly assessed at $2,797.92. Now what amount in taxes, fees, charges, etc., would a Kansas company, similar to the Texas company, be required to pay to the state of Texas, if it operated in that state under the same conditions that the Texas company operated in Kansas, that is,

without the Kansas company having invested any of its assets in Texas securities? The answer must be found in the Texas law. It is agreed, under those circumstances—which are the exact circumstances under which plaintiff was operating in Kansas—the annual tax would have been 3.25 percent. (Rev. Civ. Stat. Texas, art. 7064, as amended by Acts 1936, 44th Leg., 3d Civ. Stat., p. 2040, ch. 495, art. 4, § 5; Acts 1937, 45th Leg., p. 525, ch. 258, § 1.) The total tax would have been $4,592.67. That is the amount defendant assessed plaintiff. In other words, it was and is defendant's contention that the correct method to employ in determining the amount of the total taxes, fees, charges, etc., to be paid by a foreign corporation doing business in this state, is to apply the statute of the domicile of the foreign corporation as though it were the statute of this state. Defendant further contends that in so applying the Texas statute, it was his official duty, in determining the rate to be applied, to note the fact that plaintiff had none of its assets invested in Kansas securities.

With that contention plaintiff does not agree. It argues Kansas should exact the same total in taxes, fees, charges, etc., from it as a Kansas company would be required to pay in Texas if the Kansas company had fifty percent of its assets invested in Texas securities. It is conceded if plaintiff's theory is correct it would be required, under the Texas law, to pay only .625 percent (5/8 of 1 percent) of the gross premiums received by it in Kansas, or $1,098.56. Plaintiff contends since that amount is less than the sum of $2,797.92, exacted under our primary laws, the Kansas retaliatory statute does not become operative. The trouble with that contention is it ignores the all-important fact that a Kansas company operating in Texas would have, and that plaintiff now has, the benefit of the low rate in Texas only by reason of the fact that it has fifty percent of its assets invested in Texas securities. True, if a Kansas company operating in Texas, had fifty percent of its assets invested in Texas securities, it would be entitled, under the Texas law, to the same low rate there accorded to a Texas company, which had fifty percent of its assets invested in Texas securities. If, however, the Kansas company did not have fifty percent of its assets invested in Texas securities, it would be required to pay the higher rate of 3.25 percent under the Texas law, which is the exact rate upon which defendant assessed the plaintiff company. It is therefore apparent that whatever the theory of approach may be the total tax is that assessed by de-

fendant. Plaintiff has none of its assets invested in Kansas and it is not entitled to insist upon a rate in this state which it could not obtain in its own state under those identical conditions. Plaintiff has been accorded by defendant exactly the same treatment a Kansas company operating in Texas would receive if it had invested none of its assets in Texas securities. Such interpretation and application of the law, it seems to us, conforms to the rules of comity, the purpose and essence of which are substantial equality.

Plaintiff frankly concedes diligent search has revealed no authorities directly in point, but contends the following cases are persuasive as to the soundness of its position: *Occidental Life Ins. Co. v. Holmes*, 107 Mont. 48, 80 P. 2d 383; *State, ex rel., v. Continental Ins. Co.*, 67 Ind. App. 536; *State v. American Ins. Co.*, 79 Ind. App. 88. Defendant does not agree with the conclusions plaintiff draws from those decisions (which may be found in Annotation 91 A. L. R. 795), nor that the last two cases cited by plaintiff represent the majority view. He contends the Montana case, in principle, supports his position that he had the right to take into account the fact that plaintiff had invested no part of its assets in Kansas. Defendant further contends *Bankers Life Co. v. Richardson*, 192 Cal. 113, 218 Pac. 586, and *Cochrane v. Bankers' Life Co.*, 30 F. 2d 918, support his position. We need not dwell upon the cases cited by either of the parties. It is sufficient to say they do not contain anything which leads us to doubt the correctness or fairness of the conclusion we have reached. The motion for the writ is denied.