REPUBLIC INSURANCE COMPANY AND ANOTHER v.
COMMISSIONER OF TAXATION.

138 N. W. (2d) 776.

September 24, 1965—No. 39,546.

326

*Robert W. Mattson,* Attorney General, and *Jerome J. Sicora,* Assistant Attorney General, for relator.

*W. H. Oppenheimer, Oppenheimer, Hodgson, Brown, Wolff & Leach,* and *J. L. Shook,* for respondents.

*Thomas C. Lynch,* Attorney General, and *Harold B. Haas,* Assistant Attorney General, for State of California, amicus curiae.

MURPHY, JUSTICE.

Certiorari to review an order of the Board of Tax Appeals reversing an order of the commissioner of taxation denying respondents' claims for refund. The issue involves the application to out-of-state insurance companies doing business in Minnesota of subd. 1 of Minn. St. 71.23, the so-called Minnesota retaliatory law.

From the record it appears that both respondents, Republic Insurance Company and Vanguard Insurance Company, are organized under the laws of the State of Texas and authorized to transact all types of insurance, except life insurance, personal accident insurance, life and accident insurance, or health and accident insurance. Both are authorized to transact business in the State of Minnesota. For the year 1960 Republic paid to the State of Minnesota a tax equal to 2 percent of the gross premiums of all direct business received by it in this state. That tax is imposed by Minn. St. 60.63. The commissioner of insurance assessed retaliatory taxes against Republic for an additional sum of $8,436.62. This amount was paid to the state treasury and a claim for refund made. The commissioner of insurance also assessed retaliatory taxes against Vanguard in the sum of $563.57 for the same year. This amount was also paid and a claim for refund filed. Both claims were denied by the commissioner of taxation.

Under Texas statutes insurance companies doing business in that state pay a gross premium tax at a basic rate of 3.85 percent. Vernon's Ann. Texas Civil Stat. Art. 7064. This rate may be reduced by investment in certain defined Texas securities. The amount of reduction depends upon the ratio of Texas assets to assets invested in the state where the company has its highest percentage of admitted assets. The reduction is shown by the following scale:

| Investment Ratio | Rate of Tax |
|---|---|
| 75—80% | 3.025 |
| 80—85% | 2.75 |
| 85—88% | 2.2 |
| 88—90% | 1.65 |
| Excess of 90% | 1.1 |

Republic and Vanguard each had its highest percentage of admitted assets invested in Texas and each had in excess of 90 percent of its investments invested in Texas securities as defined by Vernon's Ann. Texas Civil Stat. Art. 7064.

During the calendar year 1960 eight Minnesota fire and casualty companies doing business similar to that of Republic and Vanguard were licensed to do business in Texas. Of the eight, six paid gross premium tax to the State of Texas at a 3.85 percent rate. Two paid that tax at the 1.1 percent rate because of their investment in Texas securities.

The Board of Tax Appeals concluded that since the Texas companies qualify under Texas law for a rate lower than the Minnesota prescribed rate of 2 percent, and since certain Minnesota companies with large investments in Texas have also qualified for the lower rate there, the commissioner was without authority to assess additional taxes against the Texas companies under the Minnesota retaliatory law.

The commissioner of taxation on the other hand contends that as a matter of fact the rate of taxation in the State of Texas is 3.85 percent and since that rate is in excess of the rate imposed by the State of Minnesota, Texas insurance companies operating in this state should be taxed on the same basis as they are taxed in the State of Texas.

The issue presented requires an interpretation of the Minnesota retaliatory act. This act, Minn. St. 71.23, provides:

"Subdivision 1. When by the laws of any other state or country any taxes, fines, deposits, penalties, licenses, or fees, in addition to or in excess of those imposed by the laws of this state upon foreign insurance companies and their agents doing business in this state, are imposed on insurance companies of this state and their agents doing business in that state or country, or when any conditions precedent to the right to do business in that state are imposed by the laws thereof, beyond those imposed upon these foreign companies by the laws of this state, the same taxes, fines, deposits, penalties, licenses, fees, and conditions precedent shall be imposed upon every similar insurance company of that state or country and their agents doing or applying to do business in this state so long as these foreign laws remain in force.

"Subd. 2. In the event that a domestic insurance company, after com-

plying with all reasonable laws and rulings of any other state or country, is refused permission by that state or country to transact business therein after the commissioner of insurance of Minnesota has determined that that company is solvent and properly managed and after he has so certified to the proper authority of that other state or country, then, and in every such case, the commissioner may in his discretion forthwith suspend or cancel the certificate of authority of every insurance company organized under the laws of that other state or country to the extent that it insures, or seeks to insure, in this state against any of the risks or hazards which that domestic company seeks to insure against in that other state or country. Without limiting the application of the foregoing provision, it is hereby determined that any law or ruling of any other state or country which prescribes to a Minnesota domestic insurance company the premium rate or rates for life insurance issued or to be issued outside that other state or country shall not be deemed reasonable."

The Texas Insurance Code contains a retaliatory act, Vernon's Ann. Texas Civil Stat. Art. 21.46, which differs from the Minnesota act in that it applies where the "taxes, licenses, fees, fines, penalties, deposit requirements or other obligations, prohibitions or restrictions" imposed by another state on a Texas insurance company doing business there are "in the aggregate" in excess of such burdens imposed upon similar out-of-state companies doing business in Texas. The act also provides that—

"* * * wherever under any law of this State the basic rate of taxation of any insurance company of another state * * * is reduced if any such insurance company has made investments in Texas securities then in computing the aggregate Texas premium tax burdens of any such insurance company of any other state * * * each shall for purpose of comparison with the *premium tax laws of their home states be considered to have assumed and paid an aggregate premium tax burden equal to the basic rate * * *.*" (Italics supplied.)

■ Certain preliminary observations may be made with reference to the general subject of retaliatory insurance laws. It may be said generally that states have enacted these laws to protect their own insurance com-

panies doing business in other states. The theory of the state is that foreign insurance companies doing business in the taxing state should be subject to the same burdens as domestic insurance companies doing business in any foreign state. These statutes are primarily regulatory, the taxing feature being regarded as incidental. In some instances, statutes of various states so complement each other as to achieve an equalization on the basis of reciprocity. But in the absence of such an accommodation, the application of retaliatory sanctions results.

Difficulties in the application of retaliatory laws grow out of the lack of uniformity of insurance regulations among the states. Because of the varying provisions in insurance statutes, an exact comparison cannot always be achieved. If each state were to impose the same taxes with variance only as to rate, and other burdens were equal, there would be little difficulty. A helpful examination of the various retaliatory statutes is found in an article by George A. Pelletier, Jr., appearing in 39 Notre Dame Lawyer 243. This article contains an able and exhaustive review of the leading authorities on the issue, including State v. Fidelity & Cas. Ins. Co. 39 Minn. 538, 41 N. W. 108; Employers Cas. Co. v. Hobbs, 152 Kan. 815, 107 P. (2d) 715; Massachusetts Mutual Life Ins. Co. v. Hobbs, 163 Kan. 289, 181 P. (2d) 512; Occidental Life Ins. Co. v. Holmes, 107 Mont. 48, 80 P. (2d) 383; Pacific Mutual Life Ins. Co. v. State, 161 Wash. 135, 296 P. 813; Board of Ins. Commrs. v. Prudential Fire Ins. Co. (Tex. Civ. App.) 167 S. W. (2d) 578; Kansas City Life Ins. Co. v. Love, 101 Tex. 531, 109 S. W. 863; 44 C. J. S., Insurance, § 76; 2 Couch, Insurance (2 ed.) § 21:96.

■ In discussing the practical difficulties encountered in the application of retaliatory laws, Pelletier's article points out that in the computation of the tax 23 states specifically require by statute that the aggregate method be used. This approach comprehends the computation of total burdens exacted, including taxes, licenses, fees, fines, penalties, deposits, etc.[1] Other states have adopted the item-by-item approach which comprehends a comparison of a particular tax with a like tax, a particular fee

---

[1] In considering the aggregate approach, it should be kept in mind that the word "aggregate" as used in the Texas statute refers specifically to the "aggregate premium tax burden."

with a similar fee, and licenses with licenses. The difficulty with this approach is that when the domiciliary state imposes an obligation which the retaliating state does not, there can be no valid comparison. It may be also noted that troublesome questions arise as to whether the impositions of local taxes, fees, fines, and other obligations are includible in the computation of the aggregate burdens imposed by the state.

It may be observed by way of dicta that while the variant provisions and methods of application of the laws of various states make it difficult to reconcile the many authorities on this subject, it appears nevertheless that the practical effect of the statutes has been to stabilize at a fairly reasonable level the exactions to which a foreign corporation is subjected for the privilege of doing out-of-state business. It would appear that in actual practice this result has been achieved by a policy of restraint, reasonableness, and practical judgment on the part of the administrative authorities charged with the obligation for their enforcement. For instance, insurance commissioners in some states consider only the items of tax on premium income and fees paid and disregard other burdens because of the practical difficulties involved in computing and comparing the varying exactions.[2]

■ On the basis of the record before us and the theory upon which this matter was presented both before the Board of Tax Appeals and in this court, the result we reach must depend upon a comparison of the Minnesota tax, which is a straight 2 percent, with the flexible graduated Texas tax, which purportedly ranges from 1.1 percent to 3.85 percent. The core of respondents' argument, as expressed in their brief, is this:

"Minnesota imposes a flat 2% of gross premiums as a tax. Texas does not impose a tax of 3.85% of gross premiums, it starts with that figure and adjusts downward according to other conditions to a tax as low as 1.1%. The tax finally arrived at and paid is the tax assessed at the reduced rate * * *."

We must be controlled by the plain wording of the Minnesota retaliatory act which says that when taxes imposed by the laws of another state are "in addition to or in excess of those imposed by the laws of this

---

[2] 39 Notre Dame Lawyer 243.

state" upon similar insurance companies, the same tax will be paid in Minnesota by companies of that state doing business here. Our statute requires a comparison on the basis of what, on the one hand, Minnesota companies are required by a foreign state to pay and what, on the other hand, Minnesota requires foreign companies doing business in Minnesota to pay and imposes retaliation if the foreign tax be higher.

In State v. Queen City Fire Ins. Co. 114 Minn. 471, 474, 131 N. W. 628, 629, this court in referring to the version of the statute embodied in L. 1907, c. 420, said:

"* * * It imposes on foreign insurance companies doing business in this state the same conditions, provisions, and requirements imposed by the laws of foreign states or countries upon like companies of this state transacting business in such foreign states or countries. The complaint states that the South Dakota statute requires all fire insurance companies, except mutual, doing business in that state, to pay into the state treasury two and one-half per cent. of the gross amount of premiums received during the preceding year, and as a condition of doing business in that state shall pay annually to the commissioner of insurance, in addition to all other taxes, one-half of one per cent. of the gross premiums received during the previous year."

■ The Board of Tax Appeals in determining that the commissioner of taxation was without authority to impose an additional tax upon the respondent companies relied upon State v. Fidelity & Cas. Ins. Co. 39 Minn. 538, 41 N. W. 108. We cannot agree that this decision controls. That authority stands for the proposition that retaliatory statutes will not be invoked unless restrictions or burdens imposed by the foreign state can be clearly proved.[3] We are not presented with that difficulty.

---

[3] Annotation, 91 A. L. R. 795, 813, states: "In the absence of any judicial construction of the law by the courts of the state retaliated against, or of a practical administration of it in a manner prejudicial to corporations of the retaliating state, the retaliatory statute of the latter state should not be deemed applicable where it is doubtful how the statute of the state retaliated against should be construed, even though the courts of the retaliating state be of the opinion that the probable effect of such statute is to restrict the operation of its corporations to a narrower field than that allowed by it to

■ Any doubt as to how the Texas law should be applied has been resolved by their own authorities. Board of Ins. Commrs. v. Prudential Fire Ins. Co. (Tex. Civ. App.) 167 S. W. (2d) 578; Vernon's Ann. Texas Civil Stat. Art. 21.46. In the Prudential case the Texas court said that when a company doing business in Texas qualified for the reduced rate by reason of investments in Texas securities, it was in fact paying the full tax imposed by law. The reduced tax together with investment of assets was equivalent to the higher rate. The court said, citing Kansas City Life Ins. Co. v. Love, 101 Tex. 531, 533, 109 S. W. 863, 864 (167 S. W. [2d] 579):

"It was doubtless thought by the Legislature that such companies as complied with the law would bring into the state valuable securities in a large amount, which might be subject to state taxation, and that in view of such additional taxation it was but just to reduce their occupation tax."

And went on to say (167 S. W. [2d] 579)—

"* * * that a compliance with the option to invest assets in Texas property would make this valuable property subject to taxation and that in view of such additional taxation it was but just to reduce their occupation tax."

The court concluded in that particular case that the payment of the minimum rate "plus the investment in Texas property requirement is equivalent to the payment of the higher 4.05% flat rate" then in effect. 167 S. W. (2d) 579. In other words the credit allowed for investments in Texas

the corporations of the state retaliated against. State ex rel. Clapp v. Fidelity & C. Ins. Co. (1888) 39 Minn. 538, 41 N. W. 108. Consequently, there being a doubt as to whether the law of New York, the state retaliated against, prohibited foreign corporations to transact more than one kind of insurance business in that state, it was held in this case that the retaliatory statute of Minnesota should not be applied as against a New York insurance company doing business in Minnesota, the court saying: 'We shall not express what, in our opinion, may be the possible or probable effect of the statute of New York upon the point in question, considering that, if the proper construction is doubtful, the case is not one for the application of our retaliatory law.' "

securities provides an alternative way of paying the full tax of 3.85 percent now in effect.

Nor can we agree with the Board of Tax Appeals that the Texas retaliatory law is not discriminatory. In its opinion the board stated:

"* * * There is no more burden, if it is a burden, on foreign corporations than on domestic corporations. The same law applied to both. There is no evidence before the Board as to whether compliance with the Texas investment statute is or is not difficult. Suffice it to say that numerous foreign corporations, including Minnesota corporations, have seen fit to adjust their investment portfolios so as to take advantage of the lower rate afforded thereby."

It is true that if the six Minnesota companies who paid the 3.85 percent rate had sufficient assets invested in Texas securities, they could qualify for a lower exaction. But the respondent companies are in the same situation in Minnesota. Their investments in Minnesota securities and assets are minimal and they should not expect to get the benefit of a rate here which they would not be entitled to in their own state under similar conditions. Employers Cas. Co. v. Hobbs, 152 Kan. 815, 107 P. (2d) 715. Moreover, it is not an answer to say that the Texas law is nondiscriminatory because an out-of-state company may adjust its investment portfolio so as to avail itself of equal treatment under the Texas law. This observation ignores the realities of the insurance business. It should require no statistics to demonstrate that the Texas statute operates to the advantage of domiciliary insurance companies. When a company organizes and begins business, its home state obviously becomes its major market. Its volume, surplus, and physical plant are developed in the local market and it can be expected that it will invest largely in local securities and property. Its investments become fixed in its own market until it becomes strong enough to expand elsewhere. That is why the Texas law with its requirement of investment, not merely in a certain type of assets but in Texas securities in an amount which must bear a given relation to the amount of investment in the state of highest investment, necessarily constitutes a built-in preference in favor of a domestic company. By following the described investment policy in their home states foreign com-

panies operating in Texas ultimately are subject to a tax rate for Texas business about three times that imposed on a domestic company.

It is not necessary for us to go beyond a comparison of the Minnesota gross premium tax with that of the State of Texas. We are not concerned with total exactions which may arise from a comparison of total obligations imposed by the respective laws relating to fines, deposits, penalties, licenses, fees, and other conditions or exactions. The narrow issue is whether the graduated tax imposed by the law of Texas is in excess of the straight 2 percent tax imposed by the law of Minnesota. Since, as we have already indicated, the Texas rate is higher, we conclude that the commissioner of taxation properly applied the retaliatory statute and that the decision of the Board of Tax Appeals should be reversed.

Reversed.

ON APPLICATION FOR REHEARING.

On December 17, 1965, the following opinion was filed:

PER CURIAM.

The respondent insurance companies have petitioned for a rehearing. It is asserted that our opinion adopts the "aggregate" method of applying the Minnesota retaliatory law, an issue which was not presented to the Board of Tax Appeals, and that we have failed to consider former administrative interpretations of the Minnesota retaliatory law.

In deference to the earnest contentions of counsel for the respondents, we have again examined the record in this case. It consists of the usual pleadings, a stipulation of facts entered into between the taxpayers and counsel for the commissioner of taxation, certain documentary exhibits, and the findings and order of the Board of Tax Appeals. The record does not contain evidence which would put in issue the question of whether the commissioner was required to follow the "aggregate" method or the "item-by-item" approach to the construction of the Minnesota retaliatory laws. The legal issue presented for review was stated in the brief of the taxpayers:

"The issue involved is whether Minnesota can apply the provisions of its retaliatory statute so as to tax a Texas company, paying Texas

336

under that State's statutory formula a gross premium tax of 1.1%, at 3.85% of gross premiums when a Minnesota company doing business in Texas complying with the provisions of the Texas statute is treated in identically the same manner, taxed on the same basis as the Texas company, and is likewise taxed in Texas at 1.1% of gross premium."

The foregoing issue is fully discussed and answered in our opinion. We do not understand, as respondents' counsel contends, that in our decision we adopted the "aggregate" method of applying the Minnesota retaliatory law. The decision does not so hold nor would the record warrant such a holding.

Petition denied.