No. 34,233

EMPLOYERS CASUALTY COMPANY, *Plaintiff*, v. CHARLES F. HOBBS, as Commissioner of Insurance of the State of Kansas, et al., *Defendants*.

(89 P. 2d 923)

Opinion filed May 6, 1939.

*Thomas F. Doran, Clayton E. Kline, M. F. Cosgrove, Balfour Jeffrey* and *Robert E. Russell,* all of Topeka, for the plaintiff.

*Jay S. Parker,* attorney general, and *C. Glenn Morris,* assistant attorney general, for the defendants.

The opinion of the court was delivered by

THIELE, J.: This is an original proceeding in mandamus to compel repayment to the plaintiff of a claimed excess of taxes, fees and charges paid by the plaintiff under protest in 1938 for the preceding year's business, and as a result of an exaction by the commissioner of insurance under the retaliatory provisions of our statutes pertaining to foreign insurance companies authorized to do business in this state.

There is no dispute of fact, and the legal question pertains to the

proper method to be applied in fixing the amount to be exacted, if any, under the retaliatory statute.

It may be observed the general purpose of retaliatory statutes is to compel equality of treatment of foreign and domestic corporations as between state and state, or state and another country. Although some of the legislation is directed at corporations generally, most of the statutes are directed at insurance corporations. Discussion of the general question may be found in 17 Fletcher on Corporations, Perm. ed., p. 456, § 8461; 8 Thompson on Corporations, 3d ed., p. 819, § 6598; 1 Couch, Cyclopedia of Insurance, p. 580, § 246; 12 R. C. L. 66; 14 R. C. L. 863; 14a C. J. 1268, and 32 C. J. 991.

Our first comprehensive act regulating insurance companies was Laws 1871, ch. 93. Section 17 of that act contained not only the schedule of fees to be exacted from every insurance corporation doing business in the state, but also a provision for retaliation as that word is used herein. This above section has been frequently amended, but essentially the retaliatory provisions have been little changed. The constitutionality of the section was challenged in *Phoenix Ins. Co. v. Welch,* 29 Kan. 672, and the section was declared valid. In discussing the nature of the retaliatory clause, this court, in an opinion by Mr. Justice Brewer, said:

"This provision is called in insurance circles a 'retaliatory clause.' It seems to us more justly to be deemed a provision for reciprocity. It says, in effect, that while we welcome all insurance corporations of other states to the transaction of business within our limits, we insist upon a like welcome elsewhere, and that if other states shall attempt, directly or indirectly, to debar our corporations from the transaction of insurance business within their borders, we shall meet their corporations with the same restrictions and disability. It is, in brief, an appeal for comity; a demand for equality. As such, it is manifestly fair and just. It arouses no sense of injustice, and simply says to every other state in the Union: 'We will meet you on the basis of equality and comity, and will treat you as you treat us.'" (p. 674.)

Original section 17, referred to in the above opinion, has, by amendment, been subdivided, and now appears as follows: G. S. 1935, 40-252, requires that every insurance company organized under the laws of this state or doing business in this state shall pay annually to the commissioner of insurance the fees and taxes specified. Reference to that section will disclose the variance made between corporations organized under the laws of this state and those organized under the laws of another state. The retaliatory portion of the original section now appears as G. S. 1935, 40-253, and reads as follows:

"Whenever the existing or future laws of any other state or country shall require from insurance companies or fraternal benefit societies organized under the laws of this state, or of the agents thereof, applying to do business in such other state or country, any deposit of securities in such state or country for the protection of policyholders therein, or otherwise, or any payment for taxes, fines, penalties, certificates of authority, licenses, fees, compensation for examination, or otherwise, greater than the amount required for such purpose from insurance companies of other states by the then existing laws of this state, then, and in every case, all companies of any such state or country, doing business in this state shall make the same deposit, for a like purpose, with the commissioner of insurance of this state, and pay to the commissioner of insurance for taxes, fines, penalties, certificates of authority, licenses, fees, compensation for examination, or otherwise, an amount equal to the amount of such charges and payments imposed by the laws of such other state or country upon the companies of this state and the agents thereof."

It may here be stated that plaintiff presents two alternative theories as to the method for determining the amount of fees, taxes or other exactions to be paid this state by a corporation organized under the laws of another state or country. The first is that the specified items of fees, of taxes and of other exactions of this state as set forth in our statutes are to be compared with the like specified items set forth in the statutes of the incorporating state. The corporation is to pay to this state the amount of each specified item as set forth in our statute, but if on a like item the statute of the corporate domicile requires a higher rate or amount, then that higher rate or amount shall control, but if the statute of the corporate domicile shall provide for any particular fee or other exaction tax not specified in the Kansas statute there may be no exaction on account thereof. In the alternative, it contends that if the above method be not proper, then there should be no comparison of any particular item either of fees or taxes, etc., or of totals of fees, of taxes, etc., but that comparison be made of grand totals of both fees, taxes, etc., calculated under the laws of this state and under the laws of the corporate domicile, and if the grand total under the laws of the foreign state exceeds that under the laws of this state, the retaliatory tax should be limited to that excess.

The defendant's theory is that he may compare specific items of fees, of taxes, and of other exactions as set forth in our statutes with the same specific items as set forth in the statutes of the corporate domicile, and take the higher amount of fees or the higher rate of tax, etc.; that if our statutes provide for a fee or a tax or an exaction not provided in the other state, it may nevertheless be included, and

that if the law of the corporate domicile provide for a fee or a tax or other exaction not included in our statutes, it also may be exacted in retaliation.

Following out its first theory, plaintiff in 1938 filed its statement of business and annual report for the year 1937 and paid taxes and fees as follows:

Taxes:

| | | |
|---|---|---|
| For gross premium tax (2%) (G. S. 1935, 40-252) | $3,389.07 | |
| For firemen's relief fund (G. S. 1935, 40-1703) | 37.92 | |
| For fire-marshal tax (G. S. 1935, 75-20b14) | 9.48 | |
| And a tax under G. S. 1935, 40-253, being in retaliation of tax assessed under the Laws of Texas (Vernon's Texas Statutes [Civil] art. 7064) on Kansas companies doing business in the state of Texas | 2,118.17 | |
| | | $5,554.64 |

Fees and charges:

| | | |
|---|---|---|
| For filing annual statement (G. S. 1935, 40-252) | $50.00 | |
| For state school fund (G. S. 1935, 40-252) | 50.00 | |
| For renewal of certificate of authority (G. S. 1935, 40-252) | 1.00 | |
| | | 101.00 |

| | |
|---|---|
| Total taxes, fees and charges | $5,655.64 |

Thereafter, the commissioner of insurance, following out his theory, and as alleged in the motion for the writ, made an additional assessment against the plaintiff, as follows:

1. $6.00 in retaliation for provisions of the Laws of Texas requiring the publication of certificates of compliance by all insurance companies doing business within that state during 1937.
2. $155.81, as one-fifth of one percent of the premiums received by the plaintiff for motor-vehicle insurance written in the state of Kansas during the year 1937, in retaliation for a fee at such rate charged under the provisions of the laws of the state of Texas upon insurance companies doing business in the state of Texas.
3. And on or about May 18, 1938, defendant purported to make a further assessment and charge on this plaintiff in the amount of $497, being three-fifths of one percent of the premiums received by the plaintiff on all workmen's compensation insurance written by it within the state of Kansas during the year 1937, in retaliation for a fee at such rate charged under the provisions of the laws of the state of Texas upon insurance companies doing business in the state of Texas.

The Kansas statute makes no specific provision for any of the last above fees, taxes or charges. In order to preserve its right to do business within the state of Kansas, plaintiff, under protest, paid the exaction. Later the commissioner held a hearing and thereafter

notified the plaintiff there would be no refund of the protested taxes, and the present proceeding was commenced.

We need not set out the allegations of the motion for the writ. The relief sought is an order compelling refund of the entire exaction referred to above, or in the alternative for the difference between what was paid and what should have been paid had the amount been properly assessed under plaintiff's second theory. The answer presents the theory of the commissioner of insurance as heretofore set forth. An annotation on constitutionality, construction, operation and effect of retaliatory statutes may be found in 91 A. L. R. 795, and on page 806 is a portion dealing with equalization of tax. Bearing in mind that the statutes of the various states differ not only in respect to the fees and taxes demanded, but in their specific retaliatory provisions, it may be fairly deduced from the various cases therein cited that the general intent of retaliatory statutes is to level the amount of taxes and fees that must be paid and to insure substantial equality. In the above note, reference is made to *Life & Casualty Ins. Co. v. Coleman*, 233 Ky. 350, 25 S. W. 2d 748. In that case it was said:

"In enacting the retaliatory insurance statute, it was the purpose of the legislature to equalize the burdens imposed upon foreign and domestic companies. There can be no equalization of the burden unless the taxes levied or the obligations imposed are the same in the aggregate. In order to provide equality, which is the manifest object of the statute, it is not necessary to levy a specific tax to meet a similar tax levied by another state, but, if the aggregate of the taxes collected from a foreign insurance company in the retaliating state equals the tax imposed on foreign insurance companies by the state in which the taxed company is incorporated, the object of the law has been attained. Equality is the result aimed at and is achieved when the ultimate taxes levied are equal, even though they are imposed by different arms of the respective state governments and are applied to different purposes. . . .

"Our conclusion is that the provisions of the retaliatory tax statute were complied with when the Tennessee company paid an amount equal to the total tax payable by foreign companies on the same volume of business in Tennessee, and, in determining the amount to be paid, the Tennessee company must be given credit for municipal taxes paid in Kentucky." (pp. 354, 356.)

And see, also, the more recent case of *Occidental Life Ins. Co. v. Holmes*, (Mont.) 80 P. 2d 383, where a review is made of the purpose of retaliatory tax laws. In that case the question was whether the Montana retaliation provision was applicable to a California corporation, the law of the latter state giving certain credits for tax

paid on real estate in that state, a provision not found in the laws of Montana. We shall not concern ourselves with the details of that case, nor the conclusion reached that there was no occasion to apply the retaliatory tax law. The decision, however, is rested in part on the proposition that in determining whether a retaliatory tax is due, the total exactions must be taken into account, irrespective of how such exactions may be characterized or named.

Under our statutes an insurance company organized under the laws of another state or country is required to pay certain specified fees as a condition to its right to do business in this state. In order to insure that insurance companies organized under the laws of this state seeking to do business in another state may be accorded fair treatment, we have the retaliatory statute. Whether the statute comes into operation with respect to any foreign insurance company depends on the exactions required by the state of its domicile of Kansas insurance companies seeking to do business there. And where our statute refers to exactions by other states "greater than the amount required for *such purpose* from insurance companies of other states by the then existing laws of this state" the purpose to be served is compliance as a condition to the right to do business. And we think it clear, both from the standpoint of the end sought to be accomplished by the statute, and the grammatical structure of the statute, that it was never intended there should be a comparison as between the statutory requirements of this state and of the state in which the foreign corporation is chartered so that a particular tax should be measured against a like tax in the other state, a particular fee measured against a like fee, etc., nor that taxes should be aggregated and measured against aggregated taxes of the other state, fees aggregated and measured against aggregated fees, etc. To so hold would compel us to ignore the phrase "or otherwise" twice used in the statute, for it in and of itself contemplates exactions not included in those specified. The first part of the section makes provisions as to when it shall be applicable. Applicability being determined, the requirement of the statute, eliminating for the moment qualifying phrases, is—

"then . . . all companies of any such state . . . doing business in this state shall . . . pay to the commissioner of insurance for taxes," etc., "an *amount equal to the amount of such charges and payments* imposed by the laws of such other state . . . upon the companies of this state . . ." (G. S. 1935, 40-253.) (Italics ours.)

The word "amount" refers to all exactions under whatever name and in the aggregate; it is used in the singular, not in the plural, and should not be otherwise interpreted. And such an interpretation accords with the interpretation given similar statutes by courts of other jurisdictions as the above-cited authorities disclose.

As has been shown, the plaintiff made a return and paid tax in the original amount of $5,655.64, and it thereafter paid the additional assessment made up of separate items of $6, $155.81 and $497, or the total of $6,314.45. There is no dispute that if the Texas statute were applied to a Kansas corporation doing the same amount and volume of business in Texas that the plaintiff company did in Kansas, the taxes, fees, charges, etc., under the Texas law would be as follows:

Premium taxes:

| | | |
|---|---|---|
| Gross premiums, 3¼% | $5,507.24 | |
| Workmen's compensation insurance commissioner's maintenance tax, three-fifths of 1% | 497.00 | |
| Motor-vehicle insurance division fund tax, one-fifth of 1% | 155.81 | |
| Fire marshal's tax, one-half of 1% (same as Kansas).. | 9.48 | |
| Firemen's relief fund | 37.92 | |
| Total taxes under Texas law | | $6,207.45 |

Annual fees:

| | | |
|---|---|---|
| For filing annual statement | $20.00 | |
| For issuance of certificate of compliance | 1.00 | |
| For certified copies of certificate of compliance | 1.00 | |
| Total annual fees under Texas laws | | 22.00 |

Other requirements:

| | |
|---|---|
| Cost of publication of certificate | 6.00 |

| | |
|---|---|
| Total taxes, fees and charges under Texas law | $6,235.45 |

It follows that the amount paid by the plaintiff company exceeds the amount a Kansas insurance company of like size would have had to pay the state of Texas by $79. To that extent the supplemental order complied with by the plaintiff company under protest was an unlawful exaction, and to that extent the plaintiff company is entitled to a refund, and a writ of mandamus so limited will issue. It is so ordered.