Tart, J.
The principal question to be determined is whether Section 3905.41, Revised Code, authorizes retaliation against a Pennsylvania insurance company on a showing that license fees on such an Ohio company would be greater in Pennsylvania even though the aggregate burden of taxes and license fees on such an Ohio company would be no greater in Pennsylvania.
In State, ex rel. New England Mutual Life Ins. Co., v. Reinmund (1887), 45 Ohio St., 214, 13 N. E., 30, it appeared that Ohio imposed an annual tax upon the gross receipts from Ohio business of every agency of a foreign insurance company at the rate of taxation on personal property in effect in the county in which the agency was located; and that Massachusetts imposed on every foreign insurance company an annual excise tax of %% upon the aggregate net value of all policies held by its residents. Relying upon a statute which then read substantially the same as Section 3905.41, Revised Code, now does, the Ohio Superintendent of Insurance sought to collect from a Massachusetts insurance company an excise tax equivalent in amount to what such an Ohio company would have been required to pay in Massachusetts. This court held that, in doing so, the superintendent should credit against the amount sought by reason of such Massachusetts excise tax the amount of the aforementioned Ohio tax that the agencies of the Massachusetts company had been required to pay upon their Ohio gross receipts. In paragraph one of the syllabus, it is stated that “the superintendent * * * is authorized to * * * collect * * # in addition to [the Ohio tax on gross receipts of agencies of the foreign *170 company] * * * such sum as will be sufficient to make the total equal to the amount that would be realized were the rule of taxation of the state under whose laws the foreign company is organized applied to such company’s business * * * in this state, but no more.”
In the opinion by Spear, J., it is said:
“* * # nphg two sections * * * [that imposing the personal property tax on gross receipts of agencies of foreign insurance companies and that which is now Section 3905.41, Revised Code] [are] * * * not cumulative, but * * * [what is now Section 3905.41, Revised Code] was enacted for the purpose of equalizing burdens * * *. * * * our law is protective in its character, its purpose being to protect Ohio insurance companies from impositions which might be put upon them by other states, and not retaliatory in the sense of first imposing upon foreign companies such taxes as are imposed upon other foreign corporations under like circumstances, and then, in addition, a sum equal to what other states may impose upon our companies doing business there. * * *
“Before the defendant can justify an exaction of the character here being considered, he must make it appear that, as matter of fact, the authorities of Massachusetts require of foreign companies a greater tax than our authorities impose upon foreign companies.” (Emphasis added.)
If this court in that case had given what is now Section 3905.41, Revised Code, the same literal interpretation then and now contended for by the Ohio Superintendent of Insurance, it would have obviously reached a different decision from the one it did. The excise tax imposed by Massachusetts on foreign insurance companies obviously bore no resemblance to the personal property tax on gross receipts of their agencies imposed by Ohio. Those two taxes could hardly be described by the statutory words “same obligations.”
In State, ex rel., v. Ins. Co. (1892), 49 Ohio St., 440, 31 N. E., 658, 34 Am. St. Rep., 573, 16 L. R. A., 611, this court stated that what is now Section 3905.41, Revised Code, is “retaliatory in character, and must therefore, be confined” in its operation. See also annotation, 91 A. L. R., 795, 803 (such statutes “being penal in their nature, must be strictly construed”).
*171 The Reinmund case has been followed by other courts in approving the doctrine of using the aggregate burden of different kinds of taxes in the application of similar retaliatory statutes. Bankers Life Co. v. Richardson (1923), 192 Cal., 113, 218 P., 586; Life & Casualty Ins. Co of Tennessee v. Coleman, Aud. (1930), 233 Ky., 350, 25 S. W. (2d), 748; Cochrane, Commr., v. Banker’s Life Co. (C. C. A. 8-1929), 30 F. (2d), 918. See also Pacific Mutual Life Ins. Co. of California v. State (1931), 161 Wash., 135, 296 P., 813; Commonwealth v. Fireman’s Fund Ins. Co. (1952), 369 Pa., 560, 87 A. (2d), 255; Employers Casualty Co. v. Hobbs, Commr. (1939), 149 Kan., 774, 89 P. (2d), 923; annotation, 91 A. L. R., 795.
In Pacific Mutual Life Ins. Co. v. State, supra (161 Wash., 135), it is said in the opinion by Beals, J.:
“Such a statute is wholly defensive in its purpose, is at least quasi-criminal in its nature, and should be strictly construed and applied so as to accomplish its object, and nothing further. Life & Casualty Ins. Co. v. Coleman, 233 Ky., 350 * * *. The act is in no sense a revenue measure, any increase in revenue accruing to the state under any application of the act being purely incidental. * * *
“Such statutes are proper and, indeed, necessary, but should be invoked only in cases where the inequitable discrimination is clearly established; otherwise, the insurance commissioner of the state against which the law is brought into operation will in turn apply the retaliatory law which is undoubtedly at his disposal, and an unreasonable and unjust system of mutual retaliation may be commenced, which will do no good to anyone, and result in much harm to legitimate business. ’ ’
In Life & Casualty Ins. Co. v. Coleman, supra (233 Ky., 350), it is said in the opinion by Rees, J.:
“ * * * In enacting the retaliatory insurance statute, it was the purpose of the Legislature to equalize the burdens imposed upon foreign and domestic companies. There can be no equalization of the burden unless the taxes levied or the obligations imposed are the same in the aggregate.”
The superintendent now recognizes that the Reinmund case requires him to always consider taxes in the aggregate in apply *172 ing Section 3905.41, Revised Code, but contends that, because the statute uses the words “taxes, fines, penalties, license fees, deposits of money, securities, or other obligations or prohibitions” and it would be impossible to aggregate all those items, the superintendent should not be required to aggregate any two or more of them. The Reinmund case did only require aggregation of one of those items, i. e., taxes. However, it is significant that, notwithstanding the number of times the question could have arisen under this and similar statutes, there are no decisions or other authorities indicating that taxes and license fees should not be aggregated in applying such a statute. Also, in Employers Casualty Co. v. Hobbs, supra (149 Kan., 774), it was held that taxes and license fees should be aggregated in/ applying such a statute, although the statute there involved was perhaps slightly more favorably worded for implication of such a legislative intent than is our Ohio statute. In the opinion of Thiele, J., in that case it is stated:
“* * * the general intent of retaliatory statutes is to level the amount of taxes and fees that must be paid and to insure substantial equality.”
It is really elementary that a license fee is a tax. See definition of “license” in Bouvier’s Law Dictionary (Rawles Third Revision). This court has frequently so recognized it. See opinions by Ranney, J., in Mays v. City of Cincinnati (1853), 1 Ohio St., 268, 273, 274; by Gholson, J., in Baker v. City of Cincinnati (1860), 11 Ohio St., 534, 543, 544; and by Minshall, J., in Adler v. Whitbeck (1886), 44 Ohio St., 539, 566, 9 N. E., 672. Often, a charge for a license is even referred to as a license fee or tax. There is nothing in the words of Section 3905.41, Revised Code, to indicate a legislative intent that license fees are not to be aggregated with other taxes in accordance with the legislative intent that the burden of annually imposed taxes be aggregated, which intent was recognized by this court in deciding the Reinmund case. Apparently, the General Assembly added “license fees” to the words specified in Section 3905.41, Revised Code, out of an abundance of caution in order to make sure that license fees would be taken into account with taxes in determining whether the statutory “purpose of equalizing burdens,” mentioned by Judge Spear in his opinion in the Reinmund case, had been accomplished.
*173 Admittedly, it is relatively simple to aggregate license fees with taxes but the superintendent points out the difficulty that would be involved in aggregating deposits or fines or penalties or prohibitions with taxes. We recognize that such difficulties may arise but no one is contending in this case that those items should be aggregated in applying Section 3905.41, Revised Code. It is probably sufficient to observe that the items specifically named in Section 3905.41, Revised Code, fall into four general classifications, i. e., (1) taxes and license fees which are recurrent annual governmental charges for doing business, (2) fines and penalties which are imposed as punishments for wrongdoing, (3) deposits of money or securities which represent a nonrecurrent one-time provision required by a government to protect its residents and (4) prohibitions. Certainly, if the obvious purposes of such a statute as Section 3905.41, Revised Code, are advanced by aggregating items that can be aggregated, as indicated by all the authorities, the fact that some items cannot be aggregated is no argument against aggregating those that can.
Our conclusion is that Section 3905.41, Revised Code, does not authorize retaliation against a Pennsylvania insurance company doing business in Ohio merely on a showing that the license fees imposed by Pennsylvania on such an Ohio company doing business in Pennsylvania would be greater than those imposed by our statutes on the Pennsylvania company; and, where it appears that the aggregate burden of Pennsylvania taxes and license fees on such an Ohio company would be less than the aggregate burden of Ohio taxes and license fees on the Pennsylvania company and no other basis for retaliation is advanced (except that the license fees imposed by Pennsylvania on such an Ohio company doing business in Pennsylvania would be greater than those imposed by our statutes on the Pennsylvania company), Section 3905.41, Revised Code, does not authorize any retaliation against such Pennsylvania company.
As to one of the plaintiffs, the Eureka Casualty Company, it appears from the evidence that the aggregate burden of Pennsylvania taxes and license fees on such an Ohio company doing business in Pennsylvania would be more than the aggregate burden of Ohio taxes and license fees on Eureka. How *174 ever, Eureka contends that other amounts should be added to its Ohio taxes and to the license fees required of it by Section 3905.01,' Revised Code, in order to arrive at the total burden of Ohio taxes, license fees and other similar obligations to be compared with the total burden of Pennsylvania taxes, excise fees and other similar obligations in determining whether Ohio should retaliate against Eureka pursuant to Section 3905.41, Revised Code.
Section 3905.10, Revised Code, required Eureka annually “before” it did “any business * * * in any county” in which it had “an agency” to “file a copy of” its “certificate of compliance” with the laws of Ohio (see Section 3905.09, Revised Code) “with the county recorder of such county” and provided for a ten cent fee to the recorder for filing such certificate.
Section 3905.11, Revised Code, required Eureka annually to “publish [in a newspaper] its certificate of compliance in every county where it” had “an agency.”
Section 3927.01, Revised Code, required each agent of Eureka annually to deposit a certified copy of his license with the recorder of the county where such agent was in business.
Eureka contends that the following represent “other obligations” within the meaning of those words as found in Section 3905.41,, Revised Code, and should therefore be added to license fees and taxes in arriving at the total burden imposed by Ohio on Eureka to be compared with the total burden of Pennsylvania taxes, license fees and other obligations in determining whether Ohio should retaliate against Eureka:
(1) The expense of publishing its certificate of compliance as required by Section 3905.11, Revised Code.
(2) The fees paid to the county recorders with respect to the filings required by Sections 3905.10 and 3927.01, Revised Code.
(3) The other costs with respect to those filings.
In our opinion, the words “other obligations” in Section 3905.41, Revised Code, comprehend and include obligations similar to those specified. Each of those specified in the statute involves either a payment or delivery of something to a “state, district, territory, or nation” or to one of its officers. Only the fees to be paid the county recorders are obligations of this kind. *175 In onr opinion, the words “other obligations” in Section 3905.41, Revised Code, do not include the obligations imposed upon a foreign insurance company to pay the costs and expenses, other than any filing fees to be paid county recorders, in complying with Sections 3905.10, 3905.11 and 3927.01, Revised Code.
It follows that the judgment of the Court of Appeals in favor of each of the plaintiffs except Eureka must be affirmed; and the judgment with respect to Eureka must be reversed, and the cause, only so far as it relates to that plaintiff, must be remanded to the Common Pleas Court for further proceedings in accordance with this opinion.

Judgment accordingly.

Weygandt, C. J., Zimmerman, Matthias and O’Neill, JJ., concur.
Herbert, J., not participating.