19405

John W. LINDSAY, as Chief Insurance Commissioner of South Carolina, Respondent, v. SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY, Appellant.

(188 S. E. (2d) 374)

*Messrs. Roberts, Jennings & Thomas,* of Columbia, *for Appellant,*

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *Glen E. Craig,* of Columbia, *for Respondent,*

*Messrs. Roberts, Jennings & Thomas,* of Columbia, *for Appellant, in Reply.*

April 24, 1972.

*Per Curiam:*

We are convinced that the order of the Circuit Court, as reported herewith, correctly disposes of the issues raised by the appellant. The exceptions are overruled and the judgment below is,

Affirmed.

## ORDER OF JUDGE GRIMBALL

This action was instituted by Plaintiff on January 18, 1971, pursuant to Sections 10-2001 *et seq.* of the Code, for the purpose of obtaining a declaratory judgment regarding a question in actual controversy between Plaintiff and Defendant. The facts are not in dispute.

Plaintiff has the duty of collecting license fees imposed on foreign insurers by Sections 37-121 *et seq.* of the Code. Defendant is a foreign insurer organized under the laws of Mississippi which is licensed to transact insurance in this State. Section 37-124 imposes an additional and graded license fee of 2% of net premium income from the State. Section 37-125 provides that such fee shall be reduced if the insurer makes certain investments in the securities named in Section 37-123, to wit: notes or bonds of this State or of counties or municipalities of this State or subdivisions

thereof, etc. The amount of the reduction depends upon the amount of such investments in relation to the insurer's net premium income from the State—25% of premium income, reduction is $\frac{1}{4}\%$; 50% of premium income, reduction is $\frac{1}{2}\%$; 75% of premium income, reduction is $\frac{3}{4}\%$; and 100% of premium income, reduction is 1%. The amount of Defendant's investments in such securities exceeds the amount of its annual net premium income from the State. Section 37-128 imposes a graduated license fee of 1% of net premium income from the State which cannot be reduced. Defendant has paid license fees to Plaintiff in the amount of 2% of its net premium income from the State, instead of 3% of such income.

The evidence discloses that Defendant has made substantial investments in States which do not have an investment credit statute such as Sections 37-123 and 37-125—for example, in Arkansas which imposes a tax of only 2%. Defendant acknowledges that good will and diversification enter into the decision of making investments and that diversification requires Defendant to make investments in States in which it does not operate. Therefore it seems clear that the possibility of license tax investment credit is only one of the factors considered by an insurer in determining which investments should be made by the insurer.

There are insurers chartered by South Carolina which have agencies in Mississippi. Mississippi imposes a tax on a South Carolina insurer of 3% of its premium income from Missisippi which cannot be reduced as a result of its investments in Mississippi notes, bonds, etc. Additionally, Mississippi imposes a tax of only $1\frac{1}{2}\%$ on Mississippi insurers and it gives its insurers certain credit for retaliatory taxes imposed on them by other States. Sections 9537-01 and 9537-04 of the Mississippi Statutes.

Section 37-132 of the Code provides as follows:

"§ 37-132. Increase of fees, etc., to those charged by other states.—Whenever the laws of any other state of the United

States shall require of insurance companies chartered by this State and having agencies in such other state, or of the agents thereof, any deposit of securities in such state for the protection of policyholders or otherwise or any payment of penalties, certificates of authority, license fees or otherwise, greater than the amount required for such purposes from similar companies of other states by the then existing laws of this State, all such similar companies of such states establishing or having theretofore established an agency or agencies in this State shall make the same deposit for a like purpose with the Commissioner and pay to the Commissioner, for penalties, certificates of authority, license fees, filing fees or any other fees, an amount equal to the amount of such charges imposed by the laws of such state upon companies of this State and the agencies thereof."

Plaintiff's position is that Defendant is required by Section 37-132 to pay an additional amount to Plaintiff, to wit: 1% of its net premium income from South Carolina, so that Defendant will pay South Carolina the same amount which a South Carolina insurer is required to pay Mississippi, to wit: 3% of its net premium income from Missississippi. Defendant's position is that Section 37-132 is not applicable here and that to give Section 37-132 the interpretation sought by Plaintiff would defeat the legislative intention of Sections 37-123 and 37-125 to encourage foreign insurers to invest in South Carolina securities or property.

Section 37-132 is usually referred to as the retaliatory law. It was derived from Act No. 793 of 1934 which is entitled as follows:

"An Act to Require Insurance Companies Organized Under the Laws of the States Other Than South Carolina to Pay to the State of South Carolina Not Less than the Same Amount for Penalties, Certificates of Authority, License Fees, Filing Fees or Otherwise as is Required by Such State to be Paid in Such State by Insurance Companies Incorporated Under the Laws of South Carolina."

It is "proper to consider the title or caption of an act in aid of construction to show the intent of the legislature." University of *South Carolina v. Elliott,* 248 S. C. 218, 221, 149 S. E. (2d) 433, 434 (1966). The terminology in Section 37-132 quoted above is identical to the terminology in Act No. 793 of 1934.

Our Supreme Court has not considered the nature of Section 37-132. It is similar to retaliatory laws of other States. One of the more recent decisions involving retaliatory laws is *Republic Insurance Company v. Commissioner of Taxation,* 272 Minn. 325, 329, 138 N. W. (2d) 776, 779 (1965). There the Court stated as follows:

"Certain preliminary observations may be made with reference to the general subject of retaliatory insurance laws. It may be said generally that states have enacted these laws to protect their own insurance companies doing business in other states. The theory of the state is that foreign insurance companies doing business in the taxing state should be subject to the same burdens as domestic insurance companies doing business in any foreign state. These statutes are primarily regulatory, the taxing feature being regarded as incidental. In some instances, statutes of various states so compliment each other as to achieve an equalization on the basis of reciprocity. But in the absence of such an accommodation, the application of retaliatory sanctions results."

It has been held that retaliatory laws are penal in nature and therefore should be strictly construed. Nevertheless, the law should not be construed so as to defeat its purpose.

Sections 37-123 and 37-125 were recently considered in *State v. Life Insurance Company of Georgia,* 254 S. C. 286, 175 S. E. (2d) 203 (1970). In my view Sections 37-123 and 37-125 are subject to the provisions of Section 37-132. If similar investment credit is authorized by the foreign State, then South Carolina could not retaliate since the taxes imposed by the foreign State on a South

Carolina insurer would not be greater than the taxes imposed by South Carolina on the foreign insurer. If similar investment credit is not authorized by the foreign State, then I feel that South Carolina must retaliate since the taxes imposed by the foreign State on a South Carolina insurer are greater than the taxes imposed by South Carolina on the foreign insurer.

The Texas retaliatory law has a special provision, quoted in *Republic, supra,* which recognizes a reduction such as is authorized under Sections 37-123 and 37-125. This special provision prevents retaliation in a case such as is involved here. It is quoted in the *Republic* case as follows:

" '* * * wherever under any law of this State the basic rate of taxation of any insurance company of another state * * * is reduced if any such insurance company has made investments in Texas securities then in computing the aggregate Texas premium tax burdens of any such insurance company of any other state * * * each shall for purpose of comparison with the *premium tax laws of their home states be considered to have assumed and paid an aggregate premium tax burden equal to the basic rate * * *.'* (Italics supplied.)"

Had the Legislature intended the result authorized by the Texas special provision quoted above it could have said so very easily by inserting a similar provision in Section 37-132. I feel the Court should not read such a provision into Section 37-132.

In my view the question here is not whether it would be fair and equitable to conclude that Defendant has assumed and paid an aggregate premium tax burden equal to the basic rate—3%—, in view of its ownership of South Carolina securities, but whether such conclusion is currently authorized by Section 37-132. I feel that it is not so authorized.

Defendant argues, in substance, that Plaintiff's position would defeat the purpose of Sections 37-123 and 37-125, to wit: to encourage foreign insurers to invest in South

Carolina securities or property. The evidence discloses two significant facts. First, that 82% of the South Carolina investments of foreign and alien property, casualty and allied insurers have been made by insurers domiciled in States with a general premium tax rate applicable to foreign casuality insurers of only 2%. Therefore South Carolina could not retaliate against foreign casualty insurers domiciled in such States with respect to general premium taxes since their States only require South Carolina casualty insurers to pay a general premium tax of 2% which is not greater than the general premium tax that South Carolina requires of such foreign casualty insurers. Second, that an additional 14% of such investments have been made by insurers domiciled in States with a general premium tax rate applicable to foreign casualty insurers of only 2.25% or 2.50%. Therefore South Carolina could not retaliate against foreign casualty insurers domiciled in such States with respect to general premium taxes except to the extent that one of such insurers had made South Carolina investments which reduced its general South Carolina premium tax rate below 2.50% or 2.25%. I think that this evidence makes it clear that Plaintiff's position would not defeat the legislative intention of encouraging foreign insurers to invest in South Carolina securities or property.

Defendant has called my attention to the decision in *Williams v. Thomas Jefferson Insurance Company,* 215 Tenn. 356, 385 S. W. (2d) 908 (1965). There the foreign insurer invested in certain Tennessee securities. The Tennessee statute provided for a credit upon the foreign insurer's gross premium tax for its investments in Tennessee property and securities. The foreign insurer's domiciliary State did not give such a credit to a Tennessee insurer doing business therein. The Tennessee Court held that retaliation was not required.

A Review of the *Thomas Jefferson* decision will disclose that there are certain differences between Tennessee and South Carolina. First, the Tennessee Court gave consider-

able weight to the fact that the Tennessee investment and retaliatory laws were enacted in 1953 in the same Act. This is not the case here. While Sections 37-123, 37-125 and 37-132 were included in Act No. 232 of 1947, like other insurance statutes in force at that time when the South Carolina Insurance Law was reenacted, they originated under entirely different circumstances. Sections 37-123 and 37-125, the investment statutes, first appeared in Section 14 of Act No. 3 of 1909, *Life Insurance Company of Georgia, supra.* Section 37-132, the retaliatory law, first appeared in Act. No. 793 of 1934. Second, the Tennessee Court, in discussing the Tennessee investment statute, stated "This statute does not specify a lower tax rate; does not provide a tax exemption of any kind;." Section 37-125 does specify a lower rate; and it does provide a tax exemption. Our Supreme Court has stated that it is a partial exemption statute, *Life Insurance Company of Georgia, supra.* Third, the Tennessee Court gave considerable weight to the fact that the foreign insurer's investments in Tennessee securities brought in more taxes to the State. This is not the case here. None of the securities named in Section 37-123 are subject to property taxes. The interest or income from State, county, municipal and subdivision obligations is not subject to State income taxes and foreign insurers are exempt from the payment of State income taxes. Sections 65-226(2) and 65-253(4) of the Code. Additional taxes will not accrue to the State as a result of a foreign insurer's investments in the securities named in Section 37-123. I feel that the *Thomas Jefferson* decision is not helpful here in view of these differences between Tennessee and South Carolina.

The Texas investment statute, like Sections 37-123 and 37-125, is a partial exemption statute, *Life Insurance Company of Georgia, supra;* however, as earlier noted, the Texas retaliatory law has a special provision which prevents retaliation in a case such as is involved here. Section 37-132 does not contain a similar provision.

After carefully considering this matter I feel that Defendant is required by Section 37-132 to pay an additional amount to Plaintiff so that it will pay South Carolina the same amount which a South Carolina insurer is required to pay Mississippi.

BRAILSFORD, Justice (dissenting):

Being convinced that the circuit court misconstrued the statutes involved, I respectfully dissent from the proposal that its judgment should be adopted as the judgment of this Court.

The legislative purpose in enacting the retaliatory statute, Section 37-132, Code of 1962, was to benefit South Carolina insurance companies doing business in other states by inducing such states to impose no greater burdens on South Carolina companies doing business within their borders than South Carolina imposes upon foreign insurers doing business here. Such retaliatory statutes have been enacted in many states with this objective in view. 43 Am. Jur. (2d), Insurance, Sec. 85 (1969).

On the other hand, the legislative purpose in enacting the investment credit statutes, Sections 37-123 and 37-125, was to provide an incentive to foreign insurance companies doing business in this State to invest substantially in South Carolina securities and property. It is generally believed that this credit allowance has contributed significantly to the very favorable position which South Carolina securities enjoy on the bond market.

In my judgment, the construction of these statutes adopted by the circuit court frustrates the purpose of the legislature in enacting the investment statutes insofar as Mississippi insurance companies doing business in this State are concerned, without any correlative furtherance of the policy expressed by the retaliatory statute.

The burden imposed upon South Carolina insurance companies in Mississippi is exactly the same as that imposed

upon Mississippi companies in this State; *i.e.,* a tax or license fee equal to 3% of the premiums collected within the State. This meets the equality of "license fees" demanded by the retaliatory statute. That South Carolina sees fit, in furtherance of an entirely different policy, to allow a Mississippi company the opportunity to earn a credit against this tax by making South Carolina investments does not result in inequality within the meaning of the retaliatory statute. Surely it is not South Carolina policy to induce all states to allow investment tax credit to foreign insurance companies equivalent to that allowed here. If this should come to pass, the competitive advantage which we now enjoy in marketing bonds would inevitably vanish.

I would reverse the judgment appealed from.

BUSSEY, J., concurs.