PREHEARING REPORT

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR. 
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Edna M. Evans,       
Respondent,
 
 
 

v.

 
 
 
 Willie Anderson (deceased),
 Rosa Cureton  (deceased), Matilda James  (deceased), Brown Anderson  (deceased), Fred Anderson  (deceased), Alvin Anderson  (deceased),
 Lenzy Anderson  (deceased), Curtis Anderson  (deceased), Polly Kay  (deceased), Henry 
 Anderson, Jr., (deceased), Carrie Anderson  (deceased), Lorene Osborne  (deceased),
 Willie Anderson, Jr., Leonard S. Anderson, Ronald B. Anderson, Willie
 Cureton  (deceased), Rita Cureton McCorkle  (deceased), Peggy McCorkle Lewis, Dollie
 McCorkle Sims, Brenda McCorkle Thomas, Rita McCorkle Reid, Gloria McCorkle Smith, Leroy
 James, Eddie R. Armstrong, William B. James, Henry Brown Anderson, James
 Anderson, Alma Lee Jones, Barbara "Jean" Anderson, Paul D. Anderson,
 Elizabeth Johnson, Hattie V. Harry, Titus Anderson, Gwendolyn Illena Anderson  (deceased),
 Bernice Cunningham  (deceased), Mary E. Brown  (deceased), Timothy Anderson  (deceased),
 Mildred Anderson, Eugene Cunningham, David Henry
 Cunningham, Paul Michael Cunningham, Irma Lee Cunningham, James Edward 
 Cunningham, Sandra Walker, Eddie Frank Cunningham, Alma
 Illena Cunningham, Gwendolyn Cherry, Bernettie Benton, Gaynell Buttram, aka Gaynell Foust,
 Maurice Buttram  (deceased), Edwin Lee Buttram, Patrick Buttram, Jimmy Louis
 Buttram, Gary Alex Buttram, Esther LaVern Carter 
 (deceased), Gregory Carter, Mark Christopher Buttram
 (deceased), Sharon Buttram, aka Sharon May, Sheila Buttram, aka Sheila Ruth Davis, Randy Cleotha Miller, aka Randy
 Buttram, Samuel Anderson, James Anderson  (deceased), Jamerza Yip, Philistine Jones,
 Ronald Anderson, Patricia L. Anderson Hatch, Carolyn Rouse,Mattie L. Rouse  (deceased), Mona V. Simms, Alvah Leroy
 Martin, Jr., Moffett Martin (deceased), Dorothy M. Martin (deceased), Henry W. Anderson,
 Sr., Carrie H. Johnson, Evelyn A. Grimes, Doris Jeanette Anderson Middlebrook
 (deceased), Robert H. Middlebrook, Sr.,  (deceased), Robert H. Middlebrook, Jr.,
 Garret Lavoid Middlebrook, Edwin E. Middlebrook, Krystal P. Middlebrook Meade, El Juan
 Middlebrook, James R. Anderson, Charles Anderson, Michael Anderson, Brian Anderson,
 Angela Anderson,  Audrey Anderson, James Harold Anderson (deceased), Carrie Harling, aka
 Carrie Daisy Kay, Rachel Anderson, Inez Anderson, Karen Renee Osborne, and Donna
 Bradley and also all other persons who may be entitled to claim under or through (named the
 deceased) Defendants, or any of the above-named Defendants who
 may be deceased, and also other persons unknown claiming any right, title, estate, interest in, or
 lien upon the real estate described in the Complaint herein, any unknown adult Defendants beingdesignated as a class John Doe,
 and any unknown Defendants under any disability or in the military service of the United
 States of America being designated as a class Richard
 Roe,         Defendants,         
Of whom Edwin E. Middlebrook is the,        
Appellant.
 
 
 

Appeal From Anderson County
Ellis B. Drew, Jr., Master-in-equity

Unpublished Opinion No. 2005-UP-295
Submitted April 1, 2005  Filed April 25, 2005

AFFIRMED

 
 
 
Daniel L. Draisen, of Anderson, for Appellant.
George P. Sullivan and David J. Brousseau, all of Anderson, for Respondent.
 
 
 

HEARN, C.J.:  Edwin E. Middlebrook appeals from an order by a master-in-equity approving a sales contract for real property owned by tenants in common, each of whom received his or her ownership interest in the property through inheritance.  We affirm.
FACTS
Henry Anderson died intestate in 1945 leaving approximately thirty-three acres of real property located in Anderson County, South Carolina.  The real property passed by intestate succession to Henrys heirs as tenants in common.  
Henry was survived by his wife, Carrie Anderson, eight children, one grandchild of a predeceased daughter, and two grandchildren of a predeceased son.  Carrie died in 1971.  After Carries death, Alvin Anderson, a son of Henry, petitioned for and received letters of administration for Henrys estate.  Publication for a final settlement of the estate was accomplished in 1983 and 1984, but a final settlement was never actually achieved.  In 1989, Alvin died, and Willie Anderson, another son of Henry, was named personal representative.  When Willie died in 1993, the estate was still not finally settled and no substitute personal representative was ever named.  
Since the death of Carrie, the eight children have died, each leaving multiple heirs.  In fact, the number of co-tenants of the thirty-three acres, Henrys sole asset at death, has grown to a total of sixty-nine.  In the time since Willies death, Edna Evans, a granddaughter of Henry and one of a handful of relatives still living in Anderson, looked after the property, and has coordinated the paying of taxes on it.  She did this by calling the oldest relative from each part of the family and asking him or her to pay a portion of the taxes.  According to Evans, some would not pay and she would make up any shortfall.  In 1997, Evans had the timber cut on the property and used the timber funds to pay the property taxes.  At the date of the hearing, only $310 remained from the timber funds, and the expected taxes were in excess of $1,000.  
Evans sought court approval to sell the property to third parties whom she contracted with in 1997.  The sale was specifically conditioned on court approval.  Evans filed a complaint asking the court to determine the true owners as tenants in common of the property and to order the sale of the property according to the contract for sale.  
Edwin Middlebrook, one of the co-tenants, challenged the request for court approval of the sale of the property.  Middlebrooks answer asked the court to determine the identity of the co-tenants and the interests of each, and requested the property first be offered to the tenants in common at private auction before approval of the contract for sale.  At trial, all parties stipulated to the determination of heirs as alleged in Evanss complaint.  Middlebrook admitted he learned of the property in approximately 2001 when he received a letter from Evans discussing the sale of the property.  At trial, Middlebrook offered to pay $60,000 for the property in order to keep it in the family and stated he would be willing to pay more, suggesting he would match the highest price.  Middlebrook admitted $60,000 was a fair price for the property.  
The master-in-equity found the contract should be approved, and the property sold for $60,000 in accord with the contract between Evans and the third parties.  Additionally, the court ordered the proceeds divided according to the heirs ownership interests in the property.  Middlebrook appeals.  
STANDARD OF REVIEW
A partition action is an equitable action, heard by a judge alone and, as such, this Court on review may find facts in accordance with its view of the preponderance of the evidence.  Anderson v. Anderson,  299 S.C. 110, 113, 382 S.E.2d 897, 899 (1989).  See also Freeman v. Freeman, 323 S.C. 95, 97-98, 473 S.E.2d 467, 469-70 (Ct. App. 1996) (finding an action to quiet title and partition property, where father died intestate and there was no indication that property was probated, to be an action in equity).  However, we are not required to disregard the findings of the master.  Freeman, 323 S.C. at 98, 473 S.E.2d at 469.  Nor are we required to ignore the fact that the master, who saw and heard the witnesses, is in a better position to evaluate their credibility.  Id. at 98, 473 S.E.2d at 470.
LAW AND DISCUSSION
Middlebrook alleges three errors by the master-in-equity.  First, he argues the master did not have subject matter jurisdiction.  Second, he asserts the master erred in finding a sales contract when Evans did not first seek and receive an order from the probate court to sell the property.  Third, he argues the master erred by upholding the contract for sale with the third parties when an heir was willing to purchase the property for the same price. 
1.  Subject matter jurisdiction
Middlebrook argues section 62-1-302 of the South Carolina Code (Supp. 2004) controls and vests the probate court with exclusive original subject matter jurisdiction thereby rendering the master-in-equity without jurisdiction in this case.  We disagree.[1] 
Section 62-1-302 provides:

To the full extent permitted by the Constitution, and except as otherwise specifically provided, the probate court has exclusive original jurisdiction over all subject matter related to: (1) estates of decedents, including the contest of wills, construction of wills, and determination of heirs and successors of decedents and estates of protected persons . . . .

(Emphasis added.)  
In this case, the master was not asked to determine the heirs and successors of Henry Anderson.  In fact, all the parties stipulated to the determination of the heirs as alleged in Evanss complaint.  Rather, the master relied on the subject matter jurisdiction granted by section 15-61-50 of the South Carolina Code (1976).  This section states, The court of common pleas has jurisdiction in all cases of real and personal estates held in joint tenancy or in common to make partition in kind or by allotment . . . .  See also Eichor v. Eichor, 290 S.C. 484, 487, 351 S.E.2d 353, 354 (Ct. App. 1986). 
Therefore, we find the master had subject matter jurisdiction over the present case pursuant to section 15-61-50.  
2.  Failure to obtain an order of sale from the probate court 
Middlebrook argues the master-in-equity erred in upholding the contract between Evans and the third parties because Evans did not first obtain an order of sale from the probate court.  We disagree.  
Middlebrook argues certain sections of the probate code require an order of sale from the probate court before a sales contract for estate property can be entered.  He relies on sections 62-3-711, 62-3-911, and 62-3-1301 of the South Carolina Code (Supp. 2004).  However, we find these sections are inapplicable to this case.  
Section 62-3-711 (b) provides, Except where the will of the decedent authorizes to the contrary, a personal representative may not sell real property of the estate except as authorized pursuant to the procedure described in Section 62-3-1301 et seq. . . . .  In this case, the actions complained of were not taken by the personal representative.  Additionally, Evans entered into the contract conditioned upon court approval, which was granted.  Thus, this section does not require an order of sale from the probate court prior to the sale of the property.
Section 62-3-911 provides the probate court the power to partition property either in kind or by sale.  It specifically states:  

When two or more heirs or devisees are entitled to distribution of undivided interests in any personal or real property of the estate, the personal representative or one or more of the heirs or devisees may petition the court prior to the closing of the estate, to make partition. After notice to the interested heirs or devisees, the court shall partition the property in kind if it can be fairly and equitably partitioned in kind. If not subject to fair and equitable partition in kind, the court shall direct the personal representative to sell the property and distribute the proceeds.

 Embracing Middlebrooks position would require us to find this provision negates the power of the circuit court to hear cases involving partition of real property in an estate.  See S.C. Code § 15-61-50 (1976).  However, repeal by implication is disfavored, and is found only when two statutes are incapable of any reasonable reconcilement.  See, e.g., Atlas Food Sys. & Servs., Inc. v. Crane Natl Vendors Div. of Unidynamics Corp., 319 S.C. 556, 558, 462 S.E.2d 858, 859 (1995).  Accordingly, we interpret section 62-3-911 as providing the probate court with tools necessary to effectively handle an estate, not granting it the exclusive ability to partition property held by co-tenants who received the property through an estate.  Therefore, we find this section does not require an order of sale from the probate court.
Finally, Middlebrook argues section 62-3-1301 prevents the master from upholding the sale of the property because it states: The provisions of this Part are herby declared to be the only procedure for the sale of lands by the court, except where the will of the decedent authorizes to the contrary.   First, this section concerns powers of the probate court.  Because we found the master properly has jurisdiction to partition the property, this section is inapplicable.  Additionally, the heading just above section 62-3-1301 explains that it provides a mechanism to allow for the [s]ale of real estate by probate court to pay debts.  See Lindsay v. Southern Farm Bureau Cas. Ins. Co.,  258 S.C. 272, 277, 188 S.E.2d 374, 376 (1972) (allowing reference to the title of an act to determine legislative intent).  Preservation of the property to pay estate debts is not an issue in this case.  Henry Anderson died in 1945 and based on articles of publication run in area newspapers in 1971, 1983, and 1984, it does not appear his estate has any outstanding debts.
Because the sections Middlebrook seeks to rely on are inapplicable, we find the master did not err by upholding the validity of the sales contract.
3.      Sale of the property to a third party rather than an heir 
Middlebrook argues the master erred in upholding a contract with the third parties when an heir was willing to purchase the property for the price offered by the third parties.  We disagree.
[A] court of equity may allocate a portion of the property under partition to one or more heirs while disposing of the remainder by sale.  Nevertheless, the division must be fair to all of the co-tenants.  Pinckney v. Atkins, 317 S.C. 340, 345, 454 S.E.2d 339, 342 (Ct. App. 1995) (citations omitted).  
Section 15-61-50 specifies: 

The court of common pleas has jurisdiction in all cases of real and personal estates held in joint tenancy or in common to make partition in kind or by allotment to one or more of the parties upon their accounting to the other parties in interest for their respective shares or, in case partition in kind or by allotment cannot be fairly and impartially made and without injury to any of the parties in interest, by the sale of the property and the division of the proceeds according to the rights of the parties.

(Emphasis added.)  This section does not specify a sale must be public or that property must first be offered to the heirs.  In Pruitt v. Pruitt, 298 S.C. 411, 414, 380 S.E.2d 862, 864 (Ct. App. 1989), we stated that the disparate testimony as to the value of the subject property requires partition by public sale, which will afford each party an opportunity to back her own judgment of value by bidding for the interest of the other.  In this case, Middlebrook agreed that $60,000 was a fair price for the property.  Additionally, the price was supported by the testimony of two certified real estate appraisers.  
Middlebrook apparently is motivated by a desire to keep the property in the family.  However, he had ample opportunity to act upon this desire prior to the hearing.  Moreover, he never presented a firm offer beyond promising the contract price and more, depending on what the price is.  Accordingly, we find the master did not err in upholding the sales contract with the third parties.   
For the reasons discussed above, the order of the master-in-equity is 
AFFIRMED.
KITTREDGE and WILLIAMS, JJ., concur.

[1] We recognize Middlebrooks claim that the master lacked subject matter jurisdiction can be raised for the first time on appeal.  See, e.g., Simmons v. Bellamy, 349 S.C. 473, 476, 562 S.E.2d 687, 689 (Ct. App. 2002).